08-1012-cr
United States v. Daye

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2008

Argued: November 18, 2008                                    Decided: July 10, 2009

Docket No. 08-1012-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

-v.-

BRUCE DAYE, also known as BRUCE ALLEN EMERSON,

*Defendant-Appellant*.

_____

Before:        MINER, RAGGI, LIVINGSTON, *Circuit Judges*.

Defendant-Appellant Bruce Daye appeals from a judgment of the United States District Court for the District of Vermont (Murtha, *J.*) sentencing him to 180 months' imprisonment upon his guilty plea to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Daye contends that the District Court erred by concluding that he was subject to a mandatory minimum sentence pursuant to 18 U.S.C. § 924(e)(1) and a related offense level enhancement pursuant to U.S.S.G. § 4B1.4.

Vacated and remanded.

WILLIAM B. DARROW, Assistant United States Attorney (Gregory L. Waples, Assistant United States Attorney, *on the brief*), *for* Thomas D. Anderson, United States Attorney, District of Vermont, Burlington, Vermont, *for Appellee*.

MARY P. KEHOE (Adam P. Bergeron, *on the brief*), Lisman, Webster & Leckerling, P.C., Burlington, Vermont, *for Defendant-Appellant*.

LIVINGSTON, *Circuit Judge*:

Defendant-Appellant Bruce Daye appeals from a judgment of the United States District Court for the District of Vermont (Murtha, *J.*), sentencing him to 180 months' imprisonment upon his guilty plea to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On appeal, Daye does not challenge his conviction. Rather, he asserts that the District Court incorrectly determined that he was subject to the mandatory minimum sentence of fifteen years' imprisonment imposed on armed career criminals by 18 U.S.C. § 924(e)(1) and to the related offense level enhancement set forth in U.S.S.G. § 4B1.4. More specifically, he contends that the District Court erred in concluding that his prior convictions for sexually assaulting children in violation of Vt. Stat. Ann. tit. 13, § 3252(3) (1986) (since amended) and for escape were convictions for "violent felon[ies]" as defined in 18 U.S.C. § 924(e)(2)(B). For the reasons that follow, we remand to the District Court for consideration of whether, following the Supreme Court's decision in *Chambers v. United States*, 129 S. Ct. 687 (2009), Daye's conviction for escape is a conviction for a violent felony and, if necessary, whether the crimes underlying two of Daye's three sexual assault convictions were "committed on occasions different from one another," 18 U.S.C. § 924(e)(1).

2

# BACKGROUND

On March 23, 2006, Daye was stopped for speeding in Montpelier, Vermont by Deputy Sheriff Jeffrey Severidt of the Washington County Sheriff's Department. Severidt called in Daye's identifying information, learned that Daye was subject to an outstanding warrant, and placed him under arrest. He then proceeded to search Daye's vehicle, recovering a loaded nine-millimeter handgun. Daye subsequently confessed that he had intended to kill his ex-wife and then commit suicide, noting that he had been speeding in order to catch her as she went to work.

A federal grand jury indicted Daye in January 2007 on two counts (one each for the handgun and the associated ammunition) of possessing a firearm or ammunition after having been convicted of a crime punishable by more than one year of imprisonment in violation of 18 U.S.C. § 922(g)(1). He eventually pled guilty to one of these counts.

Following Daye's guilty plea, the District Court held a sentencing hearing. The Presentence Report ("PSR") described Daye's extensive criminal history. Prior to the current incident, Daye had been convicted of at least sixteen felonies and fourteen misdemeanors. Among the felonies were two convictions for the sexual assault of a child in violation of Vt. Stat. Ann. tit. 13, § 3252(3) (1986) (since amended) in Lamoille County, Vermont, one conviction for violation of the same statute in Chittenden County, Vermont, and one conviction for escape, likely in violation of Vt. Stat. Ann. tit. 13, § 1501.[1] The Lamoille County convictions arose from an incident in which Daye took four boys blackberry picking. As described in the PSR as well as charging documents associated with these

---

[1] The record before this Court does not indicate the statute under which Daye was convicted of escape. The only Vermont criminal statute directly prohibiting such conduct, however, is Vt. Stat. Ann. tit. 13, § 1501.

3

crimes, Daye, while on this trip, molested each of the four boys and compelled two of them, one at most nine years old and the other twelve, to participate in anal sex with him. A police affidavit relating to the Chittenden County conviction states that Daye had engaged in oral sex with and digital penetration of the anus of a six-year-old boy.[2]

At the sentencing hearing, the District Court determined that Daye's convictions for the sexual assault of a child and escape qualified as convictions for violent felonies as defined in 18 U.S.C. § 924(e)(2)(B). With regard to the sexual assault convictions, the District Court concluded that, pursuant to the Supreme Court's decision in *Shepard v. United States*, 544 U.S. 13 (2005), it could consider the details of Daye's particular crimes as described in certain judicial documents and that, regardless of whether a generic conviction pursuant to Vt. Stat. Ann. tit. 13, § 3252(3) (1986) (since amended) would qualify as a conviction for a violent felony, the actual crimes committed by Daye did so qualify in light of the youth of his victims. It then found that Daye had been convicted of at least three previous violent felonies "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). In so doing, it appeared to rely, as recommended by the PSR, upon the escape conviction, the Chittenden County conviction, and either of the two Lamoille County convictions.[3] Drawing upon this finding, it also determined that Daye was subject to both the offense level

---

[2] In the original Chittenden County criminal proceeding, Daye pled *nolo contendere* to one count of sexual assault of a child based on the oral sex allegations. In the course of his plea colloquy, Daye appears to have stipulated that the factual basis for his conviction was as detailed in the police affidavit described above.

[3] Given its apparent reliance upon the escape conviction, the District Court was not required to, and did not, determine at sentencing whether the two Lamoille County convictions arose from crimes committed on occasions different from one another.

enhancement for armed career criminals pursuant to U.S.S.G. § 4B1.4, which increased the preliminary Guidelines sentencing recommendation to a range of 168 to 210 months' imprisonment, and a statutory mandatory minimum sentence of 180 months' imprisonment pursuant to 18 U.S.C. § 924(e)(1), thereby creating an effective Guidelines range of 180 to 210 months' imprisonment, *see* U.S.S.G. § 5G1.1(c). The District Court then sentenced him principally to imprisonment for 180 months.

## DISCUSSION

The issues advanced on appeal by Daye are whether the District Court correctly determined that Daye's prior convictions for sexually assaulting children and for escape were convictions for "violent felon[ies]," as defined in 18 U.S.C. § 924(e)(2)(B). We review *de novo* the District Court's conclusion that a prior offense is a violent felony. *See United States v. Lynch*, 518 F.3d 164, 168 (2d Cir. 2008).

The Armed Career Criminal Act ("ACCA") establishes a mandatory minimum sentence of fifteen years' imprisonment for a defendant who is convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) while having "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). In addition, the Guidelines impose a substantial offense level enhancement upon any defendant who qualifies for a mandatory minimum sentence under 18 U.S.C. § 924(e)(1). *See* U.S.S.G. § 4B1.4. For purposes of the ACCA, a "violent felony" is:

> any crime punishable by imprisonment for a term exceeding one year, or any act of
> juvenile delinquency involving the use or carrying of a firearm, knife, or destructive

5

device that would be punishable by imprisonment for such term if committed by an adult, that –

    (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

    (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). To determine whether a prior offense is a violent felony, we use a "categorical approach," in which we "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990); *accord Lynch*, 518 F.3d at 168. "[W]e consider whether the *elements of the offense* are of the type that would justify its [treatment as a violent felony], without inquiring into the specific conduct of this particular offender."[4] *James v. United States*, 550 U.S. 192, 202 (2007); *see also Nijhawan v. Holder*, 129 S. Ct. 2294, 2299 (2009) ("In *Taylor* and *James* we held that ACCA's language read naturally uses the word 'felony' to refer to a generic crime as *generally* committed.").

---

[4] Where the language of a particular statute encompasses both conduct that categorically constitutes a violent felony and conduct that does not, we may in some circumstances "go beyond the mere fact of conviction" to determine whether the crime underlying the conviction constitutes a violent felony, *Taylor*, 495 U.S. at 602, by examining "records of the convicting court approaching the certainty of the record of conviction," *Shepard*, 544 U.S. at 23; *see also Lynch*, 518 F.3d at 168-69. Although certain of this Court's decisions suggest that a statute is susceptible to such analysis when it encompasses both violent felonies and other crimes, but does not describe the violent felonies only in distinct subsections or elements of a disjunctive list, *see, e.g., United States v. Mills*, --- F.3d ----, 2009 WL 1812771, at *3-*4 (2d Cir. June 26, 2009), other recent decisions have indicated that this is an open question, *cf. James v. Mukasey*, 522 F.3d 250, 255-56 (2d Cir. 2008). As we conclude that all convictions for engaging in a sexual act with a child under sixteen pursuant to Vt. Stat. Ann. tit. 13, § 3252(3) (1986) (since amended) constitute violent felonies, we need not resolve this issue here.

*1. Sexual Assaults*

At the time of his sentencing, Daye had three prior convictions for sexual assault of a child in violation of Vermont law. The statute under which he was convicted, captioned "Sexual Assault," provided, in pertinent part, that:

> A person who engages in a sexual act with another person and
>
> . . .
>
> > (3) The other person is under the age of 16, except where the persons are married to each other and the sexual act is consensual;
>
> shall be imprisoned for not more than 20 years, or fined not more than $10,000.00, or both.

Vt. Stat. Ann. tit. 13, § 3252(3) (1986) (since amended).[5] The term "sexual act" was further defined to mean "conduct . . . consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any intrusion, however slight, by any part of a person's body or any object into the genital or anal opening of another." Vt. Stat. Ann. tit. 13, § 3251(1).[6]

---

[5] Section 3252 has been substantially amended and reorganized twice since Daye's convictions. Following the first amendment, which took place in 1989, the relevant portion of § 3252 was unchanged. *Compare* Vt. Stat. Ann. tit. 13, § 3252(3) (1986) (since amended), *with id.* § 3252(a)(3) (1990) (since amended). A subsequent amendment occurring in 2005, however, added, *inter alia*, an exemption for consensual sexual acts between a person under the age of nineteen and a child who is at least fifteen. *See id.* § 3252(c)(2) (2006).

[6] Sections 3251(1) and 3252 were amended on May 28, 1985. *See* Act of May 28, 1985, No. 83, sec. 2, § 3252, 1985 Vt. Acts & Resolves 365, 365. As the conduct underlying Daye's Chittenden County conviction occurred in May 1985, it is likely, although not entirely certain, that he was convicted pursuant to the pre-amendment versions of these provisions. The primary effect of the amendment to § 3252, however, was to limit application of sexual assault's traditional spousal exception. *Compare* Vt. Stat. Ann. tit. 13, § 3252 (1986) (since amended),

Engaging in a sexual act with a child under sixteen does not constitute "burglary, arson, . . . extortion, [or a crime] involv[ing] use of explosives," 18 U.S.C. § 924(e)(2)(B)(ii), and the Government does not argue that Vermont's statute "has as an element the use, attempted use, or threatened use of physical force against the person of another," *id.* § 924(e)(2)(B)(i). Rather, the Government contends that engaging in a sexual act with a child in violation of former § 3252(3) "involves conduct that presents a serious potential risk of physical injury to another" pursuant to 18 U.S.C. § 924(e)(2)(B)(ii), commonly described as the ACCA's "residual clause," *see, e.g.*, *Chambers*, 129 S. Ct. at 689.

Prior to the Supreme Court's decision in *Begay v. United States*, 128 S. Ct. 1581 (2008), our inquiry into whether a proposed predicate conviction fell within the residual clause turned solely on whether the potential risk of physical injury posed by the crime at issue was "comparable" to that posed by the residual clause's exemplar crimes such as burglary, arson, and extortion. *James*, 550 U.S. at 203. This inquiry did not require that "every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury." *Id.* at 208. Instead, the relevant consideration was whether the offense is "of a type that, by its nature," presents such a risk – or,

---

*with* Act of Apr. 23, 1977, No. 51, sec. 1, § 3252, 1977 Vt. Acts & Resolves 145, 145-46. The relevant portion of § 3252 was largely unchanged. *Compare* Vt. Stat. Ann. tit. 13, § 3252(3) (1986) (since amended), *with* Act of Apr. 23, 1977, No. 51, sec. 1, § 3252, 1977 Vt. Acts & Resolves 145, 145-46. Additionally, although the 1985 amendment altered the definition of "sexual act," its only practical effect was to expand the definition to include digital penetration of an orifice. *Compare* Vt. Stat. Ann. tit. 13, § 3251(1) (1986) (since amended), *with* Act of Apr. 23, 1977, No. 51, sec. 1, § 3251(1), 1977 Vt. Acts & Resolves 145, 145. As the 1985 amendment therefore left the relevant portion of § 3252 largely intact and expanded the definition of "sexual act" to encompass arguably less serious conduct, it is not relevant here whether Daye's Chittenden County conviction was pursuant to the pre-amendment versions of these provisions as our discussion of the post-amendment versions applies *a fortiori* to the pre-amendment versions.

stated somewhat differently,  "whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another." *Id.* (emphasis added). The infliction of a sexual act upon a child by an adult clearly qualifies.[7]  "[C]rimes involving indecent sexual contact with a child 'typically occur in close quarters, and are generally perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive power of adult authority figures.'" *United States v. Cadieux*, 500 F.3d 37, 45 (1st Cir. 2007) (quoting *United States v. Sherwood*, 156 F.3d 219, 221 (1st Cir. 1998)); *see also United States v. Mincks*, 409 F.3d 898, 900 (8th Cir. 2005) ("Whether physical injury is intended when an adult engages in sexual intercourse or sodomy with a minor, physical injury is a serious potential risk arising from either of the assaults, and is logically foreseeable."). Physical injury is both a serious and foreseeable risk in the ordinary course of such encounters.

We recognize that some of our sister Circuits have suggested that where, as here, a statute

[7] At the time of Daye's convictions, the relevant statute did not specify a minimum age for a perpetrator. *See* Vt. Stat. Ann. tit. 13, § 3252(3) (1986) (since amended). We note, however, that an "act of juvenile delinquency" constitutes a violent felony for purposes of the ACCA only if it "involv[es] the use or carrying of a firearm, knife, or destructive device." 18 U.S.C. § 924(e)(2)(B). An offense constitutes an act of juvenile delinquency if it is adjudicated as such by the applicable state. *See United States v. Lender*, 985 F.2d 151, 156 (4th Cir. 1993) ("[I]f the state prosecutes an individual as an adult, . . . the first part of the 'violent felony' definition applies; if the state prosecutes as a juvenile, then the second part applies."); *see also United States v. Ankeny*, 502 F.3d 829, 839-40 (9th Cir. 2007); *United States v. Cure*, 996 F.2d 1136, 1140 (11th Cir. 1993). Under Vermont law at the time of Daye's convictions, violators under the age of sixteen at the time of the criminal conduct could only be prosecuted through the juvenile justice system and, in addition, the prosecutor and the court each retained discretion to require prosecution in that system of violators under the age of eighteen at the time of the criminal conduct. *See* Vt. Stat. Ann. tit. 33, §§ 635, 635a (1986) (since repealed). Accordingly, a party prosecuted under former § 3252(3) as an adult, rather than as a juvenile, was necessarily at least sixteen at the time of the criminal conduct and was likely in most circumstances to be eighteen or older.

encompasses not only forcible assault but also sexual contact to which a child professes to consent, even if not legally able to do so, the crime thereby defined creates a serious risk of physical injury only when the victim is particularly young. *See, e.g., United States v. Sawyers*, 409 F.3d 732, 742 (6th Cir. 2005) (holding that violations of "statutory rape statutes that include more mature victims [(i.e. seventeen-year-olds)] and do not contain aggravating factors" do not qualify as violent felonies, absent more specific information as to the age of the victim); *United States v. Thomas*, 159 F.3d 296, 299-300 (7th Cir. 1998) (concluding that the Government had neglected to present evidence to establish a serious risk of injury to a child of sixteen, but noting that sexual contact does present such a risk to a child of thirteen). Vermont's statute, however, applies only to children and young teens – in the version applicable here, to those fifteen years old and younger. *See* Vt. Stat. Ann. tit. 13, § 3252(3) (1986) (since amended). Even assuming, as these cases implicitly do, that only injury arising from the sexual act itself may be considered when determining whether the commission of the crime will typically involve a serious risk of physical injury, young teens such as those within the compass of Vermont's statute not infrequently face such risk from even purportedly consensual contact. *See United States v. Sacko*, 247 F.3d 21, 23-24 (1st Cir. 2001) (summarizing evidence indicating that twelve to thirty-three percent of fourteen-year-old girls are not yet fully developed, and therefore face risk of physical injury from intercourse, as well as increased risk of contracting various sexually-transmitted diseases); *see also United States v. Shannon,* 110 F.3d 382, 387-88 (7th Cir. 1997) (en banc) (noting risks of injury to thirteen-year-old girls from intercourse).

More importantly, the potential risks of serious physical injury flowing from violation of Vermont's sexual assault statute are not limited to the direct physical consequences of sexual

contact. We must also consider the risk of injury traceable to the fact that the violation of statutes criminalizing sexual contact with victims who, for reasons of physical or emotional immaturity, are deemed legally unable to consent "*inherently* involves a substantial risk that physical force may be used in the course of committing the offense." *Chery v. Ashcroft*, 347 F.3d 404, 408 (2d Cir. 2003); *see also James*, 550 U.S. at 203 (classifying attempted burglary as a violent felony primarily because of the risk of injury arising "from the possibility of a face-to-face confrontation between the burglar and a third party"). When an adult inflicts a sexual act upon a child, the nature of the conduct and the child's relative physical weakness give rise to a substantial likelihood that the adult may employ force to coerce the child's accession, thereby creating a serious risk that physical injury will result. *See Dos Santos v. Gonzales*, 440 F.3d 81, 85 (2d Cir. 2006) ("[B]ecause '[a] child has very few, if any, resources to deter the use of physical force by an adult intent on touching the child[,] there is a significant likelihood that physical force may be used to perpetrate the crime.'" (second alteration in original) (quoting *Chery*, 347 F.3d at 409)); *see also United States v. Eastin*, 445 F.3d 1019, 1022 (8th Cir. 2006) ("Even if the sexual act with a child were consensual, such conduct between individuals of differing physical and emotional maturity carries a substantial risk that physical force may be used, causing injury to the child."). We therefore have no difficulty in concluding that a sexual act inflicted upon a child by an adult ordinarily creates a serious potential risk of physical harm to the child.

But this does not end the matter. The Supreme Court's decision in *Begay* refined the analytical framework employed to determine whether a prior conviction constitutes an ACCA predicate, indicating that a particular crime does not necessarily constitute a violent felony simply

11

because it presents a serious potential risk of physical injury to another comparable to that posed by the exemplar crimes in 18 U.S.C. § 924(e)(2)(B)(ii). *See Begay*, 128 S. Ct. at 1584-85. Rather, the crime must also be "roughly similar, in kind as well as in degree of risk posed," to the listed crimes, specifically burglary, arson, extortion, and crimes involving the use of explosives. *Id.* at 1585. Applying this standard, the Supreme Court concluded that driving under the influence of alcohol is not a violent felony because it differs from the listed crimes in that it does not "typically involve purposeful, violent, and aggressive conduct" that "makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Id.* at 1586 (internal quotation marks omitted). The Court noted that statutes that prohibit drunk driving, like "crimes that impose strict liability," allow conviction for "conduct [that] need not be purposeful or deliberate." *Id.* at 1586-87; *see also Chambers*, 129 S. Ct. at 692 (holding that failure to report for incarceration does not constitute a violent felony because "the crime amounts to a form of inaction, a far cry from the purposeful, violent, and aggressive conduct potentially at issue when an offender [commits one of the expressly listed crimes]" (internal quotation marks omitted)).

This Court has not previously considered whether a conviction for violating any of the various state laws prohibiting sexual assault on a child constitutes a violent felony for the purpose of § 924(e)(2)(B)(ii). We have repeatedly addressed the question, however, whether engaging in sexual contact with a minor qualifies as a "crime of violence" pursuant to 18 U.S.C. § 16(b), which in relevant part defines the phrase to include felonies that, by their nature, "involve[] a substantial risk that physical force against the person or property of another may be used in the course of

12

committing the offense."[8] In *Chery v. Ashcroft*, this Court concluded that a conviction for engaging in sexual intercourse with a child who is at least thirteen but under the age of sixteen while being at least two years older than the child is a conviction for a crime of violence. *See* 347 F.3d at 408-09. In so doing, it distinguished *Jobson v. Ashcroft*, 326 F.3d 367, 372-76 (2d Cir. 2003), and *Dalton v. Ashcroft*, 257 F.3d 200, 205-08 (2d Cir. 2001), in which this Court determined, respectively, that reckless manslaughter and driving while intoxicated are not crimes of violence because they do not involve intentional and affirmative conduct, substantially decreasing the risk that force would be applied intentionally when committing those crimes. The *Chery* Court indicated that, in contrast, sexual intercourse with a minor "requires *affirmative* conduct by the defendant (namely, sexual intercourse with a protected individual)" that uniformly occurs in circumstances presenting the risk that force will intentionally be applied. 347 F.3d at 408-09. Subsequently, in *Leocal v. Ashcroft*, the

---

[8] Section 16 of Title 18 provides in full as follows:

The term "crime of violence" means –

    (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

    (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

This definition is employed by a variety of federal criminal provisions. *See, e.g.,* 18 U.S.C. § 25 (criminalizing the use of a minor to commit a crime of violence). It arises with particular frequency in the context of removal proceedings. *See, e.g., Blake v. Gonzales*, 481 F.3d 152, 155-56 (2d Cir. 2007). Pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), an "alien who is convicted of an aggravated felony" is removable. The term "aggravated felony" includes, *inter alia*, "a crime of violence (as defined in [18 U.S.C. § 16], but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F).

13

Supreme Court in effect adopted the reasoning of *Dalton* as to driving under the influence of alcohol, concluding that driving while intoxicated does not qualify as a crime of violence pursuant to § 16(b) as that crime involves "merely accidental or negligent conduct," while the language of § 16(b) suggests that it encompasses "a category of violent, active crimes" requiring a "higher *mens rea*" than mere negligence. *See* 543 U.S. 1, 10-11 (2004). Thereafter, this Court reaffirmed its reasoning in *Chery*, concluding that, like engaging in sexual intercourse with a minor, having contact with the intimate parts of a child under the age of sixteen is a crime of violence as it "involves affirmative conduct" in the form of "the deliberate touching of [the child's] intimate parts." *Dos Santos*, 440 F.3d at 85. This type of conduct creates a risk, not generally present during the commission of a drunk driving offense, that the perpetrator will intentionally use force. *See id.*

We find this analysis quite persuasive and applicable by analogy to the case at bar.[9] The statute under which Daye was convicted, Vt. Stat. Ann. tit. 13, § 3252(3) (1986) (since amended), admittedly imposed strict liability with regard to the age of the victim. *See State v. Searles*, 621 A.2d 1281, 1283 (Vt. 1993) (noting that statutory rape "has traditionally been considered a strict liability offense" and concluding that knowledge of the age of the victim was not an element of the statutory offense). By its terms, however, § 3252(3) involves deliberate and affirmative conduct – namely, an intentional sexual act with a person who is, in fact, under the age of consent – sufficient to satisfy

---

[9] Daye contends that any reliance upon cases construing § 16(b) is in error in light of the differences in statutory language between § 924(e)(2)(B)(ii) and § 16(b). Although we recognize that such differences exist and that our previous decisions regarding § 16(b) do not control our decision in this case, we still find examination of our previous analysis of § 16(b) to be helpful in applying § 924(e)(2)(B)(ii), particularly in light of the similar standards articulated by the Supreme Court in *Leocal* and *Begay*.

14

*Begay*'s observation that violent felonies for purposes of § 924(e)(2)(B)(ii)'s residual clause typically involve "purposeful" conduct. Moreover, as discussed above and in *Chery* and *Dos Santos*, crimes involving sexual contact between adults and children create a substantial likelihood of forceful, violent, and aggressive behavior on the part of the perpetrator because a child has essentially no ability to deter an adult from using such force to coerce the child into a sexual act. *See Dos Santos*, 440 F.3d at 85; *see also Cadieux*, 500 F.3d at 45; *Eastin*, 445 F.3d at 1022. Such likely use of force not only creates a risk of injury to the victim, but also establishes that the perpetrator will commonly act in a purposeful, violent, and aggressive manner. At a minimum, we have no doubt that a typical instance of this crime will involve conduct that is at least as intentionally aggressive and violent as a typical instance of burglary. *See United States v. Almenas*, 553 F.3d 27, 34 (1st Cir. 2009). Both crimes may often involve, but do not necessarily require, the intentional use of force. Indeed, given the peculiar susceptibility of minors to coercion by adults into sexual acts, we think it more likely that violent and aggressive force will actually be employed in the course of committing the crime at issue here than in the course of committing an ordinary burglary. *See Tennessee v. Garner*, 471 U.S. 1, 21-22 (1985) (citing statistical evidence to the effect that "burglaries only rarely involve physical violence").

These conclusions are sufficient to establish that the crime at issue is a violent felony. *Begay* does not require that *every* instance of a particular crime involve purposeful, violent, and aggressive conduct. Instead, all that is required is that a crime, in a fashion similar to burglary, arson, extortion, or crimes involving the use of explosives, "*typically* involve[s] purposeful, violent, and aggressive conduct." *Begay*, 128 S. Ct. at 1586 (emphasis added) (internal quotation marks omitted); *cf.*

15

*Chambers*, 129 S. Ct. at 692 (noting that the conduct at issue with regard to a conviction for failure to report for incarceration is "a far cry from the purposeful, violent, and aggressive conduct *potentially at issue* when an offender [commits the expressly listed crimes]" (emphasis added) (internal quotation marks omitted)). Indeed, the very crimes expressly named in § 924(e)(2)(B)(ii) are not always purposeful, violent, and aggressive. *See Begay*, 128 S. Ct. at 1590-91 (Scalia, J., concurring) (noting that crimes involving the use of explosives may be committed recklessly or even negligently); *United States v. Williams*, 529 F.3d 1, 7 n.7 (1st Cir. 2008) ("Burglary, for instance, can be described as purposeful but not, at least in most instances, as purposefully violent or necessarily aggressive."); 3 Wayne R. LaFave, Substantive Criminal Law § 21.3 (2d ed. 2008) (indicating that arson traditionally could be committed not only purposefully, but also "wantonly" by, for example, starting a fire where "the act create[s] a very high risk of burning the dwelling house of another" and "the actor knew of that risk but nonetheless engaged in the risk-taking act"). *But see Begay*, 128 S. Ct. at 1586 (noting that "the word use . . . most naturally suggests a higher degree of intent than negligent or merely accidental conduct" as support for the proposition that the exemplar crimes – including crimes involving the use of explosives – typically involve purposeful conduct (alteration in original) (internal quotation marks omitted)). As a result, we conclude that engaging in a sexual act with a minor in violation of Vt. Stat. Ann. tit. 13, § 3252(3) (1986) (since amended) satisfies the standard articulated in *Begay* and is therefore a violent felony under the residual clause of 18 U.S.C. § 924(e)(2)(B).

Neither the Fourth Circuit's decision in *United States v. Thornton*, 554 F.3d 443 (4th Cir. 2009), nor the Tenth Circuit's decision in *United States v. Dennis*, 551 F.3d 986 (10th Cir. 2008),

both decided post-*Begay*, are contrary to the result reached here. In *Thornton*, the Fourth Circuit determined that the Virginia crime of carnal knowledge of a minor, which prohibits "carnally know[ing], without the use of force, a child" of thirteen or fourteen years of age, was not a violent felony for purposes of § 924(e)(2)(B)(ii). *See* 554 F.3d at 444-49 & n.2; *see also* Va. Code Ann. § 18.2-63. But as that court noted, the Virginia statute at issue has as an element the lack of the use of force, eliminating the possibility that the typical instance of the crime would be violent or aggressive, even though deliberate. *See Thornton*, 554 F.3d at 448-49. Similarly, in *Dennis*, the Wyoming indecent liberties statute criminalized conduct involving substantially older victims and included conduct, such as the provision of pornography to a minor, that is less likely to present a serious risk of physical harm than is actually engaging in sexual contact. *See* 551 F.3d at 990 & n.1 (holding that a conviction for knowingly taking immodest, immoral, or indecent liberties with a person under the age of eighteen, who may legally consent to sexual activity, as opposed to a more serious conviction for sexual intercourse with a person under the age of sixteen, who may not legally consent to sexual activity, does not involve a serious potential risk of physical injury to the minor). The present case is more akin to *Williams*, another post-*Begay* case, in which the First Circuit concluded that a conviction pursuant to 18 U.S.C. § 2423(a) for knowingly transporting a minor with intent that the minor engage in prostitution constitutes a violent felony, both because "illicit sexual activity between an adult and a minor (at least a minor below a certain age) poses a significant risk that force will be used in the consummation of the crime" and because an offender's behavior in exposing children to such encounters, even if not itself directly violent, is nevertheless purposeful,

17

violent, and aggressive under the reasoning of *Begay*. *See* 529 F.3d at 5, 7-8.[10]

As a final matter, Daye contends that the ACCA's residual clause applies only to property crimes, not to crimes against the person such as sexual assault. In support of this argument, he notes the Supreme Court's statement in *Begay* that, in enacting the most recent version of § 924(e)(2)(B), "Congress sought to expand th[e] definition [of the term 'violent felony'] to include both crimes against the person (clause (i)) and certain physically risky crimes against property (clause (ii))." 128 S. Ct. at 1586; *see also id.* (noting that the applicable House Report "described clause (ii) as including 'State and Federal felonies against property such as burglary, arson, extortion, use of explosives and similar crimes as predicate offenses'" (emphasis omitted) (quoting H.R. Rep. No. 99-849, at 5 (1986)).

We find this argument unpersuasive. Despite the language cited by Daye, the Supreme Court did not rely in *Begay* on the distinction between property crimes and crimes against the person. Instead, as noted above, the Court focused upon whether the crime at issue typically involves purposeful, aggressive, and violent conduct. *See id.* at 1586-88. The distinction proposed by Daye also is not mandated by the language of § 924(e)(2)(B), which makes no mention of it. Although clause (i) of § 924(e)(2)(B) requires a crime to "ha[ve] as an element the use, attempted use, or

___

[10] We recognize that our decision in this case may be in some tension with the Ninth Circuit's decision in *United States v. Christensen*, 559 F.3d 1092 (9th Cir. 2009). The statute at issue in *Christensen*, however, excluded young children from its application and, indeed, applied solely to victims who were at least fourteen. For the reasons described above, moreover, we find the reasoning of that decision, which relied upon the conclusion that the offense at issue "d[id] not *necessarily* involve either 'violent' or 'aggressive' conduct," to be unpersuasive. *Id.* at 1095 (emphasis added). *Compare Begay*, 128 S. Ct. at 1586 (noting that the exemplar crimes "all *typically* involve purposeful, 'violent,' and 'aggressive' conduct" (emphasis added)).

18

threatened use of physical force against the person of another," it encompasses not only pure crimes against the person, but also offenses such as robbery that, while typically considered to be property crimes, require at least the threatened use of force against another. *See* 3 LaFave, *supra*, § 20.3 ("Robbery requires that the taking be done by means of violence or intimidation."). At the same time, the exemplar crimes listed in clause (ii) are not necessarily limited to property crimes. Crimes involving the use of explosives, for example, "do[] not necessarily require use against property rather than use against a person." *United States v. West*, 550 F.3d 952, 967 (10th Cir. 2008).

Moreover, this Court has previously concluded (albeit prior to *Begay*) that at least some non-property crimes fall within the ambit of the ACCA's residual clause, *see, e.g., Lynch*, 518 F.3d at 172-73 (concluding that criminal possession of a weapon with an intent to use it unlawfully against another in violation of N.Y. Penal Law § 265.03 constitutes a violent felony under the residual clause), and at least one of our sister Circuits has directly concluded, following *Begay*, that the scope of the residual clause is not limited to property crimes, *see West*, 550 F.3d at 965-68; *see also Almenas*, 553 F.3d at 35 (concluding that the residual clause of U.S.S.G. § 4B1.2, which is, in pertinent part, identical to § 924(e)(2)(B), encompasses both property crimes and crimes against the person). Accordingly, we conclude that the ACCA's residual clause is not limited only to property crimes, but rather encompasses both property crimes and crimes against the person that fulfill the requirements articulated in *Begay*.

2.      *Remaining Sentencing Issues*

Though we reject Daye's argument that his convictions for violating Vermont's sexual

19

assault statute do not count as violent felonies for the purpose of the § 924(e)(2)(B), we nevertheless conclude that remand is necessary to address his contention that the District Court erred in concluding that his prior escape conviction constituted an ACCA violent felony. At the time of Daye's sentencing hearing, this Court had determined that all convictions for felony escape constituted violent felonies. *See United States v. Jackson*, 301 F.3d 59, 62-63 (2d Cir. 2002), *abrogated by Chambers*, 129 S. Ct. 687. After noting the existence of this decision, Daye's counsel indicated her objection to the classification of Daye's escape conviction as a violent felony, but conceded that any challenge would be futile. As a result, the parties did not enter any information relating to that conviction into the record. After oral argument occurred in this case, however, the Supreme Court determined that mere failure to report for incarceration, although falling within the broad category of acts encompassed by the term "escape," does not constitute a violent felony. *See Chambers*, 129 S. Ct. at 691-93; *see also United States v. Mills*, --- F.3d ----, 2009 WL 1812771, at *4 (2d Cir. June 26, 2009). In this case, the PSR strongly suggests that Daye was convicted only for the failure to return to incarceration from a work furlough. Additionally, Vt. Stat. Ann. tit. 13, § 1501, like the statute at issue in *Chambers*, contains separate provisions specifically criminalizing failure to report for custody as distinguished from escape from custody. *Compare* Vt. Stat. Ann. tit. 13, § 1501(b)(1)-(2) (failure to return), *with id.* § 1501(a), (b)(3)-(4) (escape). It therefore appears likely that Daye's escape conviction is not an ACCA predicate. Without a more complete record, however, it is not possible for us to make this determination conclusively. Accordingly, we find it necessary to remand the matter to the District Court for consideration of whether, following *Chambers*, Daye's escape conviction is an ACCA predicate.

20

As a separate matter, we note that, because Daye has three prior convictions for sexually assaulting a child, he may be subject to the § 924(e)(1) mandatory minimum sentence and the U.S.S.G. § 4B1.4 sentencing enhancement regardless whether his escape conviction is a conviction for a violent felony. The District Court, however, did not address this contingency. As a result, it did not make any determination as to whether Daye's two Lamoille County convictions arose from conduct "committed on occasions different from one another." 18 U.S.C. § 924(e)(1).

This Court has previously concluded that two convictions arise from conduct committed on different occasions if they do not "stem[] from the same 'criminal episode.'" *See United States v. Rideout*, 3 F.3d 32, 34 (2d Cir. 1993). Considerations relevant to this determination include whether the victims of the two crimes were different, whether the crimes were committed at different locations, and whether the crimes were separated by the passage of time. *See id.* at 34-35; *United States v. Towne*, 870 F.2d 880, 891 (2d Cir. 1989). Employing this framework, we have concluded that two breaking-and-entering convictions "committed against different victims separated by at least twenty to thirty minutes and twelve to thirteen miles" arose from different criminal episodes. *See Rideout*, 3 F.3d at 35. Alternatively, we have found that convictions for the successive kidnapping and rape of the same victim arose out of the same criminal episode as they "were part of a continuous course of conduct which was directed against a single victim." *See Towne*, 870 F.2d at 891 (emphasis omitted).

Neither the parties nor the District Court have yet addressed the question whether Daye's two Lamoille County convictions arose from crimes committed on occasions different from one another. The record as to this issue may be incomplete, moreover, given that it was unnecessary to resolve

the issue at Daye's initial sentencing. Because we believe that this issue is appropriately addressed by the District Court in the first instance, we also remand to the District Court for its consideration, if necessary, whether Daye's two Lamoille County convictions each count as predicate felonies consistent with 18 U.S.C. § 924(e)(1).

**CONCLUSION**

For the reasons described herein, we conclude that the sexual assault of a child in violation of Vt. Stat. Ann. tit. 13, § 3252(3) (1986) is a violent felony pursuant to 18 U.S.C. § 924(e)(2)(B). Because the Supreme Court's intervening decision in *Chambers* may have rendered the District Court's reliance upon Daye's escape conviction as an ACCA predicate erroneous, however, and because the District Court has not yet had the occasion to consider whether Daye's two Lamoille County convictions arose from conduct committed on different occasions, we conclude that this case is appropriately remanded. For this reason, the sentence is **VACATED** and the case is **REMANDED** to the District Court for consideration of (1) whether, following *Chambers*, Daye's escape conviction is a conviction for a violent felony and (2) if necessary in light of its resolution of the first issue, whether Daye's two Lamoille County convictions stem from conduct committed on different occasions. Should the District Court determine that Daye does not possess three ACCA predicates, we recognize that "the entire knot of calculation" may be undone and a *de novo* resentencing may become necessary. *United States v. Quintieri*, 306 F.3d 1217, 1228 (2d Cir. 2002) (internal quotation marks omitted).