08-5245-cr
United States v. Johnson

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: December 14, 2009                                    Decided:  August 2, 2010)

Docket No. 08-5245-cr

UNITED STATES OF AMERICA,

*Appellee*,

v.

KEITH JOHNSON,

*Defendant-Appellant.*

Before: CABRANES and PARKER, *Circuit Judges*, and AMON, *District Judge.**

We consider whether a violation of Connecticut General Statute § 53a-179b ("Rioting at a

correctional institution") qualifies as a "violent felony" under the Armed Career Criminal Act (the

"ACCA"), 18 U.S.C. § 924(e)(2)(B).  Defendant Keith Johnson was convicted by a jury of one count of

being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  Following an appeal, remand

to the District Court, and resentencing, Johnson was sentenced principally to 240 months'

imprisonment.  Defendant appeals from the judgment imposing his sentence and argues that the

District Court (Ellen Bree Burns, *Judge*) erred in finding that his criminal history rendered him an armed

career criminal under the ACCA, thereby permitting the imposition of an enhanced sentence.

---

* The Honorable Carol B. Amon of the United States District Court for the Eastern District of New York,
sitting by designation.

Applying the categorical approach required by *Begay v. United States*, 553 U.S. 137 (2008), we hold that rioting at a correctional institution constitutes a violent felony because it is both similar in kind and in degree of risk posed to the offenses enumerated in 18 U.S.C. § 924(e)(2)(B).

Affirmed.

Judge Parker dissents in a separate opinion.

JEFFREY C. KESTENBAND, Tindall & Kestenband, LLC, Waterbury, CT, *for Defendant-Appellant Keith Johnson.*

ANASTASIA ENOS KING, Assistant United States Attorney (Nora R. Dannehy, United States Attorney, Curtis Isake, Law Student Intern, *on the brief*, William J. Nardini, Assistant United States Attorney, *of counsel*), District of Connecticut, *for Appellee United States of America.*

JOSÉ A. CABRANES, *Circuit Judge*:

We consider whether a violation of Connecticut General Statute ("Conn. Gen. Stat.") § 53a-179b, entitled "Rioting at a correctional institution," qualifies a "violent felony" for the purpose of the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e)(2)(B) (2006). Defendant Keith Johnson ("defendant" or "Johnson") appeals from a judgment of the United States District Court for the District of Connecticut (Ellen Bree Burns, *Judge*) sentencing him principally to 240 months' imprisonment. Johnson argues that the District Court erred in concluding that he is an armed career criminal under § 924(e) and in calculating his sentence under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") based on that finding.

## BACKGROUND

On July 9, 2004, Johnson was convicted by a jury of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was thereafter sentenced principally to 262 months' imprisonment. In calculating Johnson's sentence, the District Court determined that Johnson had been convicted of a "violent felony" on three prior occasions. Because he was being sentenced for

possession of a firearm in violation of § 922(g), those prior convictions for violent felonies rendered Johnson an "armed career criminal" for purposes of the ACCA. *See* 18 U.S.C. § 924(e).[1] Johnson did not object at sentencing to the District Court's finding that he qualified as an armed career criminal.

Johnson timely appealed from the judgment entering his conviction and imposing his sentence. We affirmed his conviction but, in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), we remanded for resentencing pursuant to *United States v. Fagans*, 406 F.3d 138 (2d Cir. 2005) (holding that a defendant who preserves a Sixth Amendment claim is entitled to resentencing in light of *Booker*). *See United States v. Johnson*, 265 F. App'x 8 (2d Cir. 2008). In our summary order affirming Johnson's conviction, we noted that we did not reach many of defendant's sentencing challenges because of our decision to remand. *Id.* at 11. We did, however, consider Johnson's objection to the District Court's finding that he qualified as an armed career criminal under the terms of § 924(e)(1) and we held that the District Court's finding was not plain error. *Id.* ("While not every conceivable instance of rioting in a correctional facility necessarily poses a serious risk of potential injury to others, in the ordinary case, the conduct encompassed by the crime does present such a risk.").

On remand for resentencing in the District Court, defendant argued that he should not be sentenced pursuant to the ACCA because one of his predicate convictions—namely, rioting at a correctional institution in violation of Conn. Gen. Stat. § 53a-179b—was not for a "violent felony"

---

[1] This statute provides, in relevant part:

> In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1). The Guidelines also provide that "[a] defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal" and, as such, is subject to offense level and criminal history category enhancements. *See* U.S.S.G. § 4B1.4.

within the meaning of the ACCA.[2] The District Court disagreed, and once again calculated Johnson's Guidelines sentence range in accordance with its finding that he qualified as an armed career criminal. The Court imposed a below-Guidelines sentence of 240 months' imprisonment. On appeal, defendant argues that the District Court erred in sentencing him as an armed career criminal.

## DISCUSSION

The only question presented in this appeal is whether defendant's conviction for rioting at a correctional institution in violation of Conn. Gen. Stat. § 53a-179b qualifies as a conviction for a "violent felony" under the ACCA, 18 U.S.C. § 924(e)(2)(B). "We review *de novo* the District Court's conclusion that a prior offense is a violent felony." *United States v. Daye*, 571 F.3d 225, 228 (2d Cir. 2009); *accord United States v. Lynch*, 518 F.3d 164, 168 (2d Cir. 2008).

The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" and that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B). The parties dispute whether rioting at a correctional institution is a "violent felony" under the ACCA's definition. Although the Connecticut statute's title suggests an obvious answer, we must look beyond its name and examine the precise conduct that the law proscribes. Moreover, we employ a "categorical approach" in our analysis meaning that we must "consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008) (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)). As the Supreme

---

[2] There is no dispute that Johnson's remaining predicate offenses, two instances of robbery, are violent felonies under the ACCA.

Court explained in *James v. United States*, the categorical approach does not "requir[e] that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony. . . . Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another." 550 U.S. 192, 208 (2007) (emphasis added).

The Connecticut statute at issue reads, in pertinent part, as follows: "A person is guilty of rioting at a correctional institution when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution." Conn. Gen. Stat. § 53a-179b(a). In determining whether a violation of that statute qualifies as a violent felony under the ACCA, we also consider whether state courts have narrowed the law's application. *See James*, 550 U.S. at 202. Although Connecticut courts have not significantly narrowed the application of the rioting statute, they have clarified its meaning. Specifically, they have construed § 53a-179b to be "specifically directed at two groups: those who lead or plan disturbances at a correctional institution, and, those who follow in the proscribed activity, whether organized or spontaneous." *State v. Rivera*, 619 A.2d 1146, 1150 (Conn. App. Ct. 1993); *see also State v. Roque*, 460 A.2d 26, 31 (Conn. 1983) (explaining that "[t]he nine verbs . . . are not nine separate statutorily proscribed methods of violating this statute" but that "their common meanings and their association with each other causes them to fall into two groups: those that cover the leaders or planners and those who follow them in the proscribed occurrence, whether it is organized or spontaneous").

Neither party asserts that the Connecticut statute proscribes violent felonies as defined by the first subsection of the ACCA. *See* 18 U.S.C. § 924(e)(2)(B)(i). Nor is rioting at a correctional institution one of the felonies enumerated in the statute's second subsection. *See* 18 U.S.C. § 924(e)(2)(B)(ii) (listing burglary, arson, extortion, and the use of explosives as violent felonies). Rather, the

5

government argues that rioting at a correctional institution falls under the final or "residual" clause of the statute because it "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii); *see Chambers v. United States*, 129 S. Ct. 687, 689 (2009).

In *Begay v. United States*, the Supreme Court held that the ACCA's residual clause applies only to "crimes that are roughly similar, *in kind* as well as *in degree of risk posed*, to the [enumerated offenses] themselves." 553 U.S. at 143 (emphases added). The Court further observed that the enumerated crimes "all typically involve purposeful, violent, and aggressive conduct." *Id.* at 144-45 (internal quotation marks omitted); *id.* at 145 (holding that driving under the influence of alcohol—which "need not be purposeful or deliberate"—did not qualify as a violent felony). Therefore, only offenses involving similar conduct—conduct that the Court explained "makes it more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim," *id.*—qualify as violent felonies.

In the instant case, therefore, we must first resolve whether rioting at a correctional institution is similar "in kind" to the offenses of burglary, arson, extortion, and the use of explosives, in that it "typically involve[s] purposeful, violent, and aggressive conduct." *Begay*, 553 U.S. at 143-45 (internal quotation marks omitted); *see also Daye*, 571 F.3d at 234 (noting that conduct is purposeful if it is "deliberate and affirmative"). Next, we must consider whether rioting at a correctional facility is similar "in degree of risk posed" to those enumerated offenses. *Begay*, 553 U.S. at 143.

## I. Similar "In Kind"

Johnson argues that rioting at a correctional institution is not similar in kind to the ACCA's enumerated offenses because the act of rioting does not require purposeful, violent, and aggressive conduct. According to defendant, many forms of passive and nonviolent conduct could violate the statute, thus making it over-inclusive. He also argues that the absence of any particular scienter requirement renders rioting at a correctional institution a strict liability crime and, therefore, it is not

6

similar in kind to those enumerated in the ACCA. *See State v. Nixon*, 630 A.2d 74, 86 (Conn. App. 1993) ("The offense of rioting at a correctional institution does not expressly provide for any particular scienter requirement."); *see also Begay*, 553 U.S. at 145 (explaining that driving under the influence of alcohol is "most nearly comparable to[ ] crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have any criminal intent at all"). The government responds that rioting at a correctional institution is a general intent crime that typically involves purposeful, violent, and aggressive conduct so as to resemble in kind those crimes enumerated.

We hold that rioting at a correctional institution is similar in kind to the ACCA's enumerated offenses. First, the rioting statute, as construed by the Connecticut state courts, is a crime of general intent and not one of strict liability. In *State v. Pascucci*, 316 A.2d 750 (Conn. 1972), for example, the Connecticut Supreme Court, construing the statutory predecessor of § 53a-179b,[3] held that "[i]ntent to do the prohibited act, not intent to violate the criminal law, is the only intent requisite for conviction in the case of many crimes constituting violations of statutes in the nature of police regulations. This statute was obviously such a police regulation." *Id.* at 753 (internal quotation marks and citations omitted); *see also State v. Nixon*, 630 A.2d 74, 86 (Conn. App. Ct. 1993) (discussing § 53a-179b and noting: "When the elements of a crime consist of a description of a particular act and a mental element not specific in nature, the only issue is whether the defendant intended to do the proscribed act. If he did so intend, he has the requisite general intent for culpability." (emphasis and internal quotation marks omitted)); *cf. Black's Law Dictionary* 882 (9th ed. 2009) (defining "general intent" as "[t]he intent to perform an act even though the actor does not desire the consequences that result" and noting that "[t]his is the state of mind required for the commission of certain common-law crimes not requiring a

---

[3] The statute at issue in *Pascucci* applied to "'(a)ny person who incites, instigates, organizes, connives at, causes, aids, abets or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of the institution.'" 316 A.2d at 751 (quoting Conn. Gen. Stat. § 53-167a) (parentheses in original).

specific intent or not imposing strict liability"). Because it is clear that rioting at a correctional institution is a crime of general intent, we reject defendant's argument that § 53a-179b imposes strict liability.

As a general intent crime, we are satisfied that rioting at a correctional institution typically involves the purposeful conduct required by *Begay*. *See* 550 U.S. at 144. In *United States v. Daye*, we acknowledged that although a statute proscribing sexual assault of a child "admittedly imposed strict liability with regard to the age of the victim"—that is, it did not require that the defendant know that the victim was a minor—it still "involve[d] deliberate and affirmative conduct" and therefore satisfied *Begay*'s requirement that a felony typically involves purposeful conduct. 571 F.3d at 233-34; *see also Begay*, 553 U.S. at 152 (Scalia, J., concurring) (noting that "one of the enumerated crimes—the unlawful use of explosives—may involve merely negligent or reckless conduct" (internal quotation marks omitted)). The conduct proscribed by Connecticut's rioting statute is similarly deliberate and affirmative. Even the hypothetical acts of "passive disobedience" that defendant cites in his brief all involve deliberate and purposeful conduct. *See* Appellant's Br. 12 (arguing that "[d]isobedience giving rise to criminal liability includes, for example, inciting or participating in a hunger strike, refusal to work at a prison job, refusal to attend counseling programs, refusal to ingest medication, and refusal to lockup in an assigned cell or housing unit"); *cf. Chambers*, 129 S. Ct. at 692 (noting that "failure to report" "amounts to a form of inaction, a far cry from . . . purposeful, violent, and aggressive conduct"). Moreover, the categorical approach, as described in *Begay*, requires only that the *typical* instance of the crime be purposeful. *See* 550 U.S. at 144.

We also have little doubt that rioting at a correctional institution "typically involve[s] . . . violent, and aggressive conduct." *Id.* at 144-45 (internal quotation marks omitted). In its brief, the government has provided statistics based on reported decisions involving convictions under § 53a-179b

8

where offense conduct was discussed.  Appellee's Br. 32-33 (collecting cases); *cf. Chambers*, 129 S. Ct. at 692-93 (considering statistical evidence in determining whether "failure to report" is typically violent). In all of the cases analyzed, the conduct at issue either (1) involved the use of a weapon or (2) resulted in injury to a guard, an inmate, or both. *Id.*  A majority of cases involved both the use of a weapon and injury.  *Id.*

Defendant takes issue with the accuracy and completeness of the government's statistics.[4]  In our view, however, the statistics merely confirm what is evident from the plain language of the rioting statute and its construction by Connecticut courts—that is, that leading, planning, or joining in a disturbance in violation of the rules of a correctional institution *typically* involves violent and aggressive behavior.  "At a minimum, we have no doubt that a typical instance of this crime will involve conduct that is at least as intentionally aggressive and violent as a typical instance of burglary."  *Daye*, 571 F.3d at 234; *see id.* ("*Begay* does not require that *every* instance of a particular crime involve purposeful, violent, and aggressive conduct." (emphasis in original)); *see also Tennessee v. Garner*, 471 U.S. 1, 21 (1985) (noting that "available statistics demonstrate that burglaries only rarely involve physical violence").

The fact that *some* arguably nonviolent conduct—such as a hunger strike—might violate the statute, or even that some convictions under the statute have actually involved nonviolent conduct, is not dispositive.  We recently held, in *United States v. Thrower*, that "larceny from the person" is a violent felony under the ACCA.  584 F.3d 70, 74 (2d Cir. 2009).  We did so notwithstanding the fact that some conduct that is neither violent nor aggressive—such as pickpocketing—would surely be covered by the

---

[4] Defendant argues that two of the cases cited by the government involved the same incident and that the government's statistics do not include the conduct at issue in *Pascucci*, which did not involve use of a weapon or result in injury.  *See* 316 A.2d at 752 (describing how the defendant "sat down in a corridor which was meant to be kept clear, refused to move when ordered to do so, waved his arms and loudly urged the inmates to sit down and not move").  We are not convinced that the behavior described in *Pascucci* could not be deemed violent or aggressive.  In any event, the government's statistics still indicate that an overwhelming majority of convictions under § 53a-179b involve violent and aggressive behavior.

statute at issue in that case.[5]  Similarly, the fact that the sexual assault statute at issue in *Daye* could have been applied to the conduct of consenting teenagers did not foreclose a holding that a "typical instance of this crime" will indeed involve violent and aggressive conduct.  571 F.3d at 234.[6]

Judge Parker argues that we fail to consider whether *each* of the statutorily delineated criminal acts in Conn. Gen. Stat. § 53a-179b typically involves violent and aggressive conduct.  *See* Dissent at 3 (noting that the statute proscribes "five distinct criminal acts: (1) disorders, (2) disturbances, (3) strikes, (4) riots, and (5) organized disobedience to a prison's rules and regulations").  He maintains that by referring to "disorders" and "disturbances," the statute criminalizes conduct "akin to disorderly conduct or disturbing the peace, neither of which are violent felonies."  *Id.* at 1, 4 (relying on Conn. Gen. Stat. §§ 53a-182, 53a-181a).   In his view, only the act of rioting typically involves violent and aggressive behavior and, therefore, we must apply the so-called "modified categorical approach" to determine which part of the Connecticut rioting statute Johnson was convicted of violating.  *Cf. Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010) (explaining that "[w]hen the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the modified categorical approach . . . permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial

---

[5] The statute at issue in *Thrower* was New York's "larceny from the person" statute, which provides that "[a] person is guilty of grand larceny in the fourth degree when he steals property and when . . . [t]he property, regardless of its nature and value, is taken from the person of another."  N.Y. Penal Law § 155.30(5).

[6] The defendant in *Daye* had been convicted of sexual assault of a child in violation of Vermont law.  At the time of his conviction, the statute, which has since been amended, provided that "[a] person who engages in a sexual act with another person and . . . [t]he other person is under the age of 16, except where the persons are married to each other and the sexual act is consensual; shall be imprisoned for not more than 20 years, or fined not more than $10,000.00 or both."  *Daye*, 571 F.3d 229 (quoting Vt. Stat. Ann. tit. 13, § 3252(3) (1986)).  A later amendment added "an exemption for consensual sexual acts between a person under the age of nineteen and a child who is at least fifteen."  *Id.* at 229 n.5 (citing Vt. Stat. Ann. tit. 13, § 3252(c)(2) (2006)).  We explained that "[a]t the time of Daye's convictions, the relevant statute did not specify a minimum age for a perpetrator" although a party prosecuted as an adult "was necessarily at least sixteen at the time of the criminal conduct and was likely in most circumstances to be eighteen or older."  *Id.* at 230 n.7.

record" (internal quotation marks omitted)).[7]

We agree that "[w]hen a statute encompasses both violent and non-violent felonies . . . we make a limited inquiry into which part of the statute the defendant was convicted of violating." *United States v. Mills*, 570 F.3d 508, 511 (2d Cir. 2009). In our view, however, the Connecticut rioting statute encompasses *only* violent felonies because *each* of the acts proscribed by the statute typically involves violent and aggressive behavior. *See Begay*, 553 U.S. at 144-45. Categorical treatment of all convictions under that statute as violent felonies is therefore required. By drawing analogies to other Connecticut statutes that use similar terminology, Judge Parker fails to account adequately for at least one critical distinction: the Connecticut rioting statute applies only to conduct occurring in *prisons*. Creating a disturbance or disorder in a prison environment is qualitatively different from doing the same on a public street corner. *See* Part II, *post*. And, in our view, such behavior is typically at least as violent and aggressive as a typical instance of burglary. *See Daye*, 571 F.3d at 234.

Furthermore, to hold that a violation of the Connecticut rioting statute is *not* categorically a violent felony would "require[] a realistic probability, not a theoretical possibility, that the State *would apply* its statute to conduct" that is not typically violent or aggressive. *See James*, 550 U.S. at 208 (emphasis added) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). But there is simply no evidence that Connecticut regularly applies § 53a-179b to nonviolent conduct. To the contrary, nearly

---

[7] Judge Parker asserts that the majority's error could "have been easily avoided by the simple, painless expedient of applying the modified categorical approach and requiring the government to show what part of the statute Johnson actually violated." Dissent at 1. However—in addition to being unnecessary—application of the modified categorical approach in this case may not be as simple as Judge Parker suggests. Johnson's presentence investigative report indicates that the probation officer was unable to obtain any information about the facts underlying Johnson's conviction under Conn. Gen. Stat. § 53a-179b. It is therefore doubtful that the government could easily demonstrate what portion of the statute Johnson was convicted of violating.

Moreover, even if the underlying conduct were known, it would be difficult, if not impossible, to determine whether the jury found that such conduct amounted to "rioting" (in which case it would qualify as a violent felony in Judge Parker's view) or constituted a mere "disorder" or "disturbance" (which Judge Parker considers to be nonviolent). Thus, in all likelihood there is no way of determining "what part of the statute Johnson actually violated." *See* Dissent at 1.

11

all reported cases involving convictions under the statute involve conduct that can only fairly be characterized as violent and aggressive. Like Judge Parker, we assume that there have been some convictions that resulted in no published decision. But there is no basis for assuming, as Judge Parker does, that the "vast majority" of convictions under § 53a-179b are not accounted for in the government's statistics, *see* Dissent at 6 n.3, nor that such unreported convictions typically involve conduct that is any less violent or aggressive than the conduct described in the cases relied on by the government.

We agree with Judge Parker that the ACCA is aimed at violent and aggressive behavior that "makes it more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Begay*, 553 U.S. at 145. At bottom, our disagreement results from differing views of what constitutes "violent and aggressive" behavior. In *State v. Rivera*, for example, the Appellate Court of Connecticut described the facts as follows:

> [After repeated orders to clear the yard a] group of about 200 inmates began to march around . . . shouting loudly. [Correction Officer] McDevitt observed the defendant with about ten other inmates near the front of this group. . . .
>
> . . . [Despite attempts to calm the inmates,] the disturbance escalated into a full-fledged riot. Inmates began running in all directions, throwing rocks and setting fires. Some inmates displayed a banner demanding media coverage. The inmates looted some buildings and burned others. Using tear gas, the correctional emergency response team restored order several hours later.

619 A.2d at 1148. Judge Parker suggests that the defendant's conduct in that case—marching at the front of a group of 200 shouting inmates—was not "violent and aggressive." Dissent at 6 n.3. We respectfully disagree.

For the foregoing reasons, we conclude that rioting at a correctional institution is "similar in kind" to the offenses of burglary, arson, extortion, and the use of explosives. The conduct proscribed by Conn. Gen. Stat. § 53a-179b is precisely the sort that "makes it more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Begay*, 553 U.S. at 145.

## II. Similar in Degree of Risk Posed

Although we considered the degree of risk posed by rioting at a correctional institution in the course of deciding defendant's first appeal, *see Johnson*, 265 F. App'x at 11, we did so under a plain error standard of review and so that holding does not dictate the outcome here. To the extent our case law has not explicitly recognized this rule, we now adopt the Fifth Circuit's holding in *Perillo v. Johnson*, 205 F.3d 775, 780 (5th Cir. 2000), that the application of law-of-the-case doctrine is generally inappropriate when relevant issues are governed by different standards of review.

Rioting at a correctional institution is similar to the ACCA's enumerated offenses in the degree of risk posed only if "the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious *potential risk* of injury to another." *James*, 550 U.S. at 208 (emphases added); *id.* at 207-08 (explaining that the ACCA's "residual provision speaks in terms of a 'potential risk'" and that "Congress intended to encompass possibilities even more contingent or remote than a simple 'risk,' much less a certainty"). The Supreme Court has observed that the ACCA's enumerated offenses all "create significant risks of bodily injury *or confrontation that might result in bodily injury*." *Id.* at 199 (emphasis added). The "main risk of burglary," for example, "arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate." *Id.* at 203; *see also Thrower*, 584 F.3d at 73 (describing the potential risks associated with burglary) (citing *Taylor*, 495 U.S. at 588).

Under this standard, we have no trouble concluding that rioting at a correctional institution "presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). "Prisons are inherently dangerous institutions," *Lewis v. Casey*, 518 U.S. 343, 391 (1996), where prison guards are greatly outnumbered by inmates—many of whom have a history of violence or of aggressive tendencies. Although a burglary gives rise to a mere risk of confrontation, leading or joining a

13

"disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations [of a correctional institution]," Conn. Gen. Stat. §53a-179b, renders confrontation with guards or other law enforcement authorities a virtual certainty. The risk of physical injury arises not only from this confrontation, but also from the fact that prisons are like powder kegs, where even the slightest disturbance can have explosive consequences. *See Sec. & Law Enforcement Employees v. Carey*, 737 F.2d 187, 213 (2d Cir. 1984) (noting the "powder-keg nature of a prison"). Every violation of prison rules creates a risk that fellow inmates will join in the disturbance, oppose it with force, or simply use its occurrence to engage in other acts of violence. *See, e.g.*, *Rivera*, 619 A.2d at 1148 (describing how a strike of the prison mess hall quickly escalated into a "full-fledged riot" with inmates looting buildings, "running in all directions, throwing rocks[,] and setting fires").

For the foregoing reasons, we conclude that "the conduct encompassed by the elements of [rioting at a correctional institution], in the ordinary case, presents a serious potential risk of injury to another." *See James*, 550 U.S. at 208.

## CONCLUSION

To summarize: We hold that rioting at a correctional institution in violation of Connecticut General Statute § 53a-179b is a violent felony under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), because:

(1) Violations of the statute are similar in kind to the ACCA's enumerated offenses in that they typically involve purposeful, violent, and aggressive conduct, *see Begay*, 555 U.S. at 144-145; and

(2) Violations of the statute are similar in the degree of risk posed in that, in the ordinary case, they present a serious risk of physical injury to another person, *see James*, 550 U.S. at 208.

Accordingly, the judgment of the District Court is **AFFIRMED**.

BARRINGTON D. PARKER, Circuit Judge, *dissenting*

The majority in my view incorrectly concludes that a conviction under Connecticut General Statute § 53a-179b necessarily qualifies as a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B) ("ACCA"). Accordingly, I dissent. Although the Connecticut statute is entitled "Rioting at correctional institution," it criminalizes much more than rioting. The statute sweeps broadly, punishing a range of prison infractions, including passive and nonviolent ones such as disregarding an order to move, engaging in a work stoppage, or counseling another inmate to "disobedience." Much, if not most, of the behavior penalized by the statute is akin to disorderly conduct or disturbing the peace, neither of which are violent felonies under the ACCA. Such behavior must, of course, be controlled and punished in order to maintain prison discipline, but it is simply not the type of behavior at which the ACCA is directed. The majority's error could, in my view, have been easily avoided by the simple, painless expedient of applying the modified categorical approach and requiring the government to show what part of the statute Johnson actually violated. This approach is required by our precedent. *See United States v. Mills,* 570 F.3d 508, 511 (2d Cir. 2009) ("When a statute encompasses both violent and non-violent felonies . . . we make a limited inquiry into which part of the statute the defendant was convicted of violating.").

The ACCA provides a mandatory minimum penalty of 15 years of incarceration for a felon who has been convicted of possessing a firearm under 18 U.S.C. § 922(g) and who has three previous convictions for a "violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). In the absence of this provision, Johnson's felon-in-possession conviction would carry a statutory maximum punishment of 10 years. 18 U.S.C. § 924(a)(2). The Sentencing

1

Guidelines also contain a provision that significantly increases a defendant's offense level if he is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e). *See* U.S.S.G. § 4B1.4. The basic purpose of the ACCA is to combat "the special danger created when a particular type of offender -- a violent criminal or drug trafficker -- possesses a gun." *Begay v. United States,* 553 U.S. 137, 146 (2008). The ACCA accomplishes this goal by looking to a defendant's past crimes as an indicator of "the kind or degree of danger the offender would pose were he to possess a gun." *Id.*

Unless a defendant's conviction under § 53a-179b is *actually* for rioting, it is far from obvious that such an offense tends to indicate that he is likely to pose any special danger with a gun. An inmate who, for example, engages in a non-violent strike or counsels a fellow inmate to "disobedience" while incarcerated is simply not involved in the type of conduct with which Congress was concerned when it passed the ACCA. The majority recognizes that "some arguably nonviolent conduct -- such as a hunger strike -- might violate" § 53a-179b, but nevertheless concludes that a conviction under the statute categorically constitutes a violent felony under the ACCA because it believes that a "'typical instance of this crime' will indeed involve violent and aggressive conduct." Maj. Op. at 10 (quoting *United States v. Daye,* 571 F.3d 225, 234 (2d Cir. 2009)). But the majority uses the wrong method of analysis. When analyzing a statute like § 53a-179b, which lists a series of different criminal acts, the question is not whether a "typical instance" of the crime involves violent and aggressive conduct, but whether *each* of the different statutorily delineated criminal acts typically involves such conduct. *See Shephard v. United States,* 544 U.S. 13 (2005). The answer to that question is "no."

Section 53a-179b provides that "[a] person is guilty of rioting at a correctional institution

2

when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution." Conn. Gen. Stat. § 53a-179b(a). Although the statute's "nine verbs . . . are not nine separate statutorily proscribed methods of violating this statute," *State v. Roque,* 460 A.2d 26, 31 (Conn. 1983), the statute does proscribe five distinct criminal acts: (1) disorders, (2) disturbances, (3) strikes, (4) riots, and (5) organized disobedience to a prison's rules and regulations. *See State v. Pascucci,* 316 A.2d 750, 752 (Conn. 1972) (noting that "other organized disobedience" refers to a separate category of conduct, namely, disobedience that is organized). As explained below, besides rioting itself, the four other acts prohibited under § 53a-179b are not "violent felonies" within the ACCA's definition of that term.

For purposes of the ACCA, a "violent felony" is:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that-
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The district court found that Johnson had committed a "violent felony" pursuant to subsection (ii). Johnson, of course, committed none of the four so-called 'exemplar crimes' specifically named in subsection (ii). Instead, the district court concluded that Johnson's violation of § 53a-179b fell under the ACCA's so-called "residual clause," which covers "conduct that presents a serious potential risk of physical injury to another."

To qualify as a violent felony under the residual clause, a crime must be "roughly similar, in kind as well as in degree of risk posed," to the ACCA's exemplar crimes. *Begay,* 553 U.S. at 143. Put differently, the applicable test is a two-pronged inquiry, asking (1) whether the crime at issue presents a serious potential risk of physical injury to another, and (2) whether the crime, "in a fashion similar to burglary, arson, extortion, or crimes involving the use of explosives, 'typically involve[s] purposeful, violent, and aggressive conduct.'" *United States v. Daye,* 571 F.3d 225, 234 (2d Cir. 2009) (quoting *Begay,* 553 U.S. at 144-45) (other citations omitted). My dissent addresses the second prong of this test.

Section 53a-179b does not define the terms "disorder," "disturbance," "strike," "riot" or "organized disobedience," but it seems clear to me, by virtue of both commonsense and common parlance, that out of these five terms, "riot" stands apart. "Disorder" is presumably akin to disorderly conduct, a Class C misdemeanor under Connecticut law encompassing acts as nonviolent as "mak[ing] unreasonable noise" and "obstruct[ing] vehicular or pedestrian traffic." Conn. Gen. Stat. § 53a-182. "Disturbance" is presumably similar to "Creating a public disturbance," a mere "infraction" under Connecticut law encompassing acts as nonviolent as "annoy[ing] or interfer[ing] with another person by offensive conduct" and "mak[ing] unreasonable noise." Conn. Gen. Stat. § 53a-181a. Strikes and organized disobedience, of course, are not typically crimes outside the confines of a prison. While I concede that some of these acts may appear relatively more serious in the prison context, context alone does not transform them from offenses that are frequently nonviolent into offenses that are typically purposeful, violent, and aggressive in a fashion similar to burglary, arson, extortion, or crimes

4

involving the use of explosives.[1]  The fact that a nonviolent, non-aggressive act takes place "in a prison environment" certainly affects the degree of risk posed by that act, but does not, in my opinion, "qualitatively" transform the "kind" of act under consideration.  *See* Maj. Op. at 12.  "Riot in the second degree," on the other hand, has much more in common with the ACCA's exemplar crimes: it is a Class B misdemeanor under Connecticut law that must involve "tumultuous and *violent* conduct" engaged in "with two or more other persons."  Conn. Gen. Stat. § 53a-176 (emphasis added).[2]

The majority errs by failing to apply the modified categorical approach to a statute encompassing, as separately listed acts, these varied, mainly nonviolent, offenses.  "When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the modified categorical approach . . . permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record."  *Johnson v. United States,* 130 S. Ct. 1265, 1273 (2010) (internal quotation marks omitted).  More specifically, when, like § 53a-179b, a statute "places together in a single numbered statutory section several different kinds of

---

[1] Connecticut's own prison regulations confirm this conclusion.  The Connecticut Department of Correction's definition of "Creating a Disturbance" includes an "inmate work stoppage," its definition of "Causing a Disruption" includes "harassing others by taunts, name calling or pushing, rattling bars, banging utensils or other objects or in any other manner creating loud or disturbing noises," and its definition of "Disorderly Conduct" includes "[a]ny nuisance or annoying behavior which interferes with the unit's order."  Connecticut Department of Correction*, Code of Penal Discipline, Administrative Directive 9.5, *available at* http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0905.pdf (last visited April 28, 2010).

[2] Rioting in the second degree appears to be the least severe rioting offense under Connecticut law.  "Rioting in the first degree" and "Inciting to riot" are both Class A misdemeanors, and also involve "tumultuous and violent conduct." *See* Conn. Gen. Stat. § 53a-175; Conn. Gen. Stat. § 53a-178.

5

behavior" that it "separately describes," but only some of the separately described behavior qualifies as a violent felony under the ACCA, courts must employ the modified categorical approach and treat the ACCA-predicate behavior "as a separate crime" from the non-ACCA-predicate behavior. *Chambers v. United States*, 129 S. Ct. 687, 691 (2009) (applying a modified categorical approach to separate into two crimes a statute criminalizing both an escape from prison and a failure to report to prison).

Accordingly, we should analyze disorders, disturbances, strikes, riots, and other organized disobedience as five separate acts, determining whether each one, standing alone, constitutes a violent felony under the residual clause. Instead, the majority errs by using a "categorical approach," asking merely whether a conviction under § 53a-179b is violent in the ordinary case, regardless of the underlying facts.[3] The categorical approach is generally the

_____

[3] In support of its argument that a violation of § 53a-179b "typically involve[s] . . . . violent, and aggressive conduct," the majority relies on statistics provided by the government that purport to analyze every reported case that (1) involves a conviction under §53a-179b, and (2) contains a discussion of the facts underlying the conviction. Maj. Op. at 9-10. Although statistics may be useful in determining whether a crime is typically violent or not, the government's statistical analysis, on which the majority uncritically relies, is in this instance intensely superficial and incomplete, covering only 11 reported cases across the 38 years since the statute's passage in 1971. Since the government's statistics are limited to reported decisions, they say nothing about how the statute was administered in the vast majority of cases that did not generate published opinions. They do not, for example, indicate the total number of convictions under the statute during that period (although we assume there were far more than 11), or provide any specific account of the factual basis for the convictions they do analyze. As a result, nearly all of the relevant questions about how the statute may have been administered remain unanswered. Why the majority could be reassured by such statistics is not clear. *Cf. Chambers v. United States,* 129 S. Ct. 687, 692 (2009) (relying, in part, on a rigorous empirical study by the Sentencing Commission showing no violence occurred in 160 cases over a two-year span).

Moreover, the mere 11 cases analyzed by the government include at least one example suggesting that § 53a-179b does not, in fact, typically involve violent and aggressive conduct when a riot is not involved. Most of the cited cases do involve defendants who participated in riots. However, in *State v. Rivera,* 619 A.2d 1146 (Conn. App. 1993), the defendant was convicted under § 53a-179b for refusing to obey a prison guard's order to stop marching in a

proper methodology to use when analyzing statutes. *See United States v. Rosa,* 507 F.3d 142, 151 (2d Cir. 2007). However, where, as here, "the statutory definition of the state crime of conviction encompasses both crimes that would qualify as a 'violent felony' and crimes that would not . . . we make a limited inquiry into which part of the statute the defendant was convicted of violating." *United States v. Mills,* 570 F.3d 508, 511 (2d Cir. 2009) (internal quotation marks omitted). Under this modified categorical approach, the government has the burden to prove that the facts underlying the defendant's conviction show that he was actually convicted under the part of the statute that constitutes a violent felony. *Id.* at 12.

In this way, the Supreme Court applied the modified categorical approach in *Shepard v. United States,* 544 U.S. 13 (2005), to analyze a Massachusetts burglary statute which provided that:

> Whoever, in the night time, breaks and enters a building, ship, vessel or vehicle, with intent to commit a felony, or who attempts to or does break, burn, blow up or otherwise injures or destroys a safe, vault or other depository of money, bonds or other valuables in any building, vehicle or place, with intent to commit a larceny or felony, whether he succeeds or fails in the perpetration of such larceny or felony, shall be punished by imprisonment in the state prison for not more than twenty years or in a jail or house of correction for not more than two and one-half years.

Mass. Gen. Laws Ann., ch. 266, § 16 (West 2008). *Shephard* "found that the behavior

---

circle and to leave an outdoor yard, *prior* to the outbreak of a riot that he is not alleged to have participated in; no one was injured, and despite the government's indication that the offense "involved a weapon," I can find no mention of the defendant having used one. Meanwhile, as Johnson argues, the government's statistics do not account for *State v. Pascucci,* 316 A.2d 750 (Conn. 1972), which involved a defendant who "sat down in a corridor that was meant to be kept clear, refused to move when ordered to do so, waived his arms and loudly urged the inmates to sit down and not to move." *Id.* at 752 (construing the statutory predecessor to § 53a-179b). *Rivera* and *Pascucci* more than adequately demonstrate "a realistic probability, not a theoretical possibility, that the State would apply its statute to" nonviolent conduct. *See James v. United States,* 550 U.S. 192, 208 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)); Maj. Op. at 12.

7

underlying, say, breaking into a building, differs so significantly from the behavior underlying, say, breaking into a vehicle, that for ACCA purposes a sentencing court *must* treat the two as different crimes." *Chambers*, 129 S. Ct. at 690 (emphasis added).

Structurally, § 53a-179b resembles the Massachusetts burglary statute at issue in *Shephard* in that it criminalizes both violent and nonviolent acts, and lists those acts as separate elements of a disjunctive list. Just as the burglary statute groups burglary of a "building, ship, vessel or vehicle," § 53a-179b groups a prisoner's participation in a "disorder, disturbance, strike, riot or other organized disobedience."[4] For the reasons stated above, participation in a riot differs significantly from participation in a strike, disorder, disturbance, or organized disobedience, in that riots are typically violent, whereas these other categories quite frequently may not be. Therefore, just as *Shephard* treated burglary of a building, but not burglary of a vehicle, as an ACCA predicate, so too should we treat a prisoner's participation in a riot, but not

---

[4] The majority's references to *United States v. Thrower*, 584 F.3d 70 (2d Cir. 2009), and *United States v. Daye,* 571 F.3d 225 (2d Cir. 2009), Maj. Op. 10, are therefore inapposite, because neither of the statutes at issue in those cases separately listed the conduct that the respective petitioner alleged was nonviolent, making a modified categorical approach inappropriate. In *Thrower*, the statute at issue, larceny from the person under New York law, provides: "A person is guilty of grand larceny in the fourth degree when he steals property and when . . . [t]he property, regardless of its nature and value, is taken from the person of another." N.Y. Penal Law § 155.30(5). Even though the majority is correct that larceny from the person might include pickpocketing, pickpocketing is not separately listed as an offense. Similarly, although the Vermont sexual-assault-of-a-child statute at issue in *Daye* "encompasses not only forcible assault but also sexual contact to which a child professes to consent," 571 F.3d at 231, the statutory language does not separately mention consensual and non-consensual contact.

In *Daye,* we recognized the existence of the modified categorical approach but left open the question of "whether a statute is susceptible to such analysis when it encompasses both violent felonies and other crimes, but does not describe the violent felonies only in distinct subsections or elements of a disjunctive list." 571 F.3d at 229 n.4. The clear implication of this observation is that where, as in the instant case, a statute *does* describe violent felonies and other crimes as elements of a disjunctive list, the statute *is* susceptible to a modified categorical analysis.

a prisoner's participation in the other acts criminalized by § 53a-179b, as an ACCA predicate.

Accordingly, the government should be required to prove that Johnson's conviction under § 53a-179b was actually for rioting.

Ultimately, to be similar in kind to an ACCA exemplar crime, the conduct at issue must be "such that it makes it more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Begay,* 553 U.S. at 145. Without knowing anything whatever about what Johnson actually did, I do not believe it is possible to conclude that he engaged in conduct suggesting that he poses a special threat with a firearm. To keep order, prisons rightfully require inmates to adhere to strict rules in virtually every aspect of their daily lives. Violations of those rules, such as those criminalized by § 53a-179b, must not go unpunished, but we must also recognize that such violations are, unfortunately, common in penal institutions, and often involve conduct entirely dissimilar to the violent and aggressive conduct typified by burglary, arson, extortion, or crimes involving the use of explosives. Before we require defendants like Johnson to spend at least five extra years in prison, beyond any state sentence, based on a prior conviction under § 53a-179b, I would remand and require the government to establish the type of conduct that led to the conviction. Because the stakes for defendants are high, this is a matter of serious concern to judges. In any event, this showing is one required by law.