United States v. Brown

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————

August Term, 2010

(Submitted: December 22, 2010                    Decided: January 5, 2011)

Docket No. 09-4991-cr

————————————————————————

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

MOZZELLE BROWN,

*Defendant-Appellant.*

————————————————————————

B e f o r e : CALABRESI, SACK, KATZMANN, *Circuit Judges.*

————————

Defendant-Appellant appeals from a judgment of conviction, entered on November 24, 2009 in the United States District Court for the District of Connecticut (Hall, *J.*), convicting defendant of being a felon in possession of a firearm and sentencing him principally to 180 months' imprisonment pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e). For the reasons stated below, the judgment of the district court is **AFFIRMED**.

————————

Counsel for Defendant-Appellant:         Richard C. Marquette, Goldblatt, Marquette &
                                         Rashba, P.C., Hamden, CT

Counsel for Appellee:                    Brian P. Leaming, Assistant United States Attorney
                                         (Sandra S. Glover, Assistant United States Attorney,

*of counsel*), *for* David B. Fein, United States Attorney for the District of Connecticut, New Haven, CT

_____

PER CURIAM:

Defendant-Appellant Mozzelle Brown appeals from a November 24, 2009 judgment of conviction entered by the United States District Court for the District of Connecticut (Hall, *J.*), following Brown's plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court found that Brown's criminal history subjected him to an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and sentenced him principally to 180 months' imprisonment, the minimum sentence provided by that statute. On appeal, Brown challenges two of the conclusions reached by the district court in determining that Brown had three prior felony convictions for violent felonies or serious drug offenses, thus triggering the ACCA's mandatory minimum. First, he claims that the district court improperly counted two of his prior drug convictions as separate ACCA predicate offenses. Second, he contends that the district court erred by treating his prior conviction for assaulting two corrections officers in violation of Connecticut General Statutes ("CGS") § 53a-167c(a)(1) as a "violent felony" within the meaning of the ACCA. We hold that the district court committed no error in either of these determinations and thus affirm the judgment of the district court.

The facts relevant to this appeal are undisputed and few. On July 24, 2008, Brown was arrested on a sealed criminal complaint after he sold a confidential informant a handgun and a half-ounce of cocaine base. Shortly thereafter, a grand jury returned a two-count indictment, and approximately one year later, Brown pleaded guilty pursuant to a plea agreement to the first count of that indictment, which charged him with being a felon in possession of a firearm in

violation of 18 U.S.C. § 922(g)(1).

The plea agreement indicated that Brown and the government disagreed about whether Brown's prior convictions subjected him to the ACCA's mandatory minimum sentence, and this issue remained contested at sentencing. As set forth in Brown's Presentence Report and the transcripts of his plea colloquies, Brown's prior convictions included the following:

*First*, on August 11, 1993, Brown pleaded guilty to a handwritten information charging him with two counts of "assault on a peace officer" in violation of CGS § "53a-167c(1)." Gov't App. 31. The prosecutor proffered that the factual basis for this plea was that on December 18, 1992, Brown kicked and punched two corrections officers at the Radgowski Correctional Center in Montville, Connecticut, when these prison guards tried to break up a fight in which Brown had been involved. Brown admitted to "assault[ing] the guards," *id.* at 70, and the court accepted his plea. Brown was sentenced to two concurrent terms of seven years' imprisonment.

We pause briefly to observe that the handwritten information's references to § "53a-167c(1)," which were repeated by the clerk during the plea hearing, identify a nonexistent subsection of CGS § 53a-167c, and thus appear to have been a scrivener's error. As the district court concluded and the parties agree, the offense to which Brown intended to plead guilty was set forth in subsection (a) of CGS § 53a-167c, which, at the time of Brown's conviction, proscribed "assault of . . . [an] employee of the department of correction."

*Second*, on October 31, 2000, Brown pleaded guilty to "sale of hallucinogen/narcotic" in violation of CGS § 21a-277(a). In support of this guilty plea, the prosecutor recited that Brown was arrested on May 3, 2000 for a motor vehicle violation, and when Brown was taken into police custody, a drug-sniffing dog alerted the police to twenty-nine rocks of crack cocaine

concealed in Brown's pants.  Brown admitted to that conduct in his plea allocution, and the court accepted his plea.

*Third*, on March 22, 2001, Brown pleaded guilty to another violation of CGS § 21a-277(a) as well as to a charge of criminal possession of a pistol.  As the factual basis for these offenses, the prosecutor recited that on November 9, 2000, the Norwich Police Department had obtained a search warrant for Brown's apartment and was conducting surveillance when Brown was seen fleeing in a motor vehicle.  The police pursued and apprehended Brown.  The police also executed the warrant at Brown's apartment, and there found crack cocaine, other drugs, a firearm, and ammunition.  The prosecutor and the court both noted that these offenses took place while Brown was awaiting sentencing for the prior § 21a-277(a) violation.  Brown admitted to this conduct, and the court accepted his plea.  On June 12, 2001, Brown was sentenced on the charges arising from both the May and November 2000 arrests to concurrent terms of ten years' imprisonment, with execution suspended with three years left to serve, and three years' probation.

We turn now to Brown's challenges to the district court's finding that these prior convictions justified an enhanced sentence pursuant to the ACCA, which requires that persons who are convicted of violating 18 U.S.C. § 922(g) and who "ha[ve] three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" be sentenced to at least fifteen years' imprisonment.  18 U.S.C. § 924(e)(1).  We review *de novo* questions of law relating to a district court's application of the ACCA, but apply clear error review to a district court's factual findings regarding the nature of a prior offense.  *See United States v. Rosa*, 507 F.3d 142, 151 & n.8 (2d Cir. 2007); *United States*

*v. Houman*, 234 F.3d 825, 827 (2d Cir. 2000) (per curiam).

Brown's first argument is that the district court erred by failing to treat his two prior drug convictions as a single ACCA predicate offense, though he does not contest that the convictions otherwise fit the definition of "serious drug offense[s]" under the ACCA, *see* 18 U.S.C. § 924(e)(2)(A). This argument is addressed to the ACCA's requirement that two offenses must be "committed on occasions different from one another" in order to be counted as separate ACCA predicate convictions. *Id.* § 924(e)(1). We have previously held that "two convictions arise from conduct committed on different occasions if they do not stem[] from the same criminal episode." *United States v. Daye*, 571 F.3d 225, 237 (2d Cir. 2009) (alteration in original) (quoting *United States v. Rideout*, 3 F.3d 32, 34 (2d Cir. 1993)) (internal quotation marks omitted). "Considerations relevant to this determination include whether the victims of the two crimes were different, whether the crimes were committed at different locations, and whether the crimes were separated by the passage of time." *Id.* In *United States v. Rideout*, we concluded that two breaking-and-entering convictions were properly treated as separate for purposes of the ACCA when these convictions were "for offenses committed against different victims separated by at least twenty to thirty minutes and twelve to thirteen miles." 3 F.3d at 35. Here, while Brown was sentenced for the two drug offenses on the same day, the conduct underlying these offenses was separated by several months, involved distinct arrests, and took place at different locations. We thus readily affirm the district court's conclusion that these two offenses were "committed on occasions different from one another" and therefore were properly counted as two separate

ACCA-qualifying convictions.[1]

Brown also challenges the district court's treatment of his conviction for assaulting corrections officers in violation of CGS § 53a-167c(a) as a "violent felony" under the ACCA. "We review *de novo* the District Court's conclusion that a prior offense is a violent felony." *Daye*, 571 F.3d at 228.

The ACCA defines the term "violent felony" to mean:

any crime punishable by imprisonment for a term exceeding one year . . . that—

(i)   has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii)  is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The Government does not contend that Brown's conviction falls under the first subsection of this definition, but rather argues that the conviction qualifies under the final, "residual" clause of the second subsection in that it "otherwise involves conduct that presents a serious potential risk of physical injury to another."

In considering whether a particular offense qualifies as a violent felony under the ACCA's residual clause, we employ a "categorical approach." *United States v. Johnson*, 616 F.3d 85, 88 (2d Cir. 2010) (internal quotation marks omitted). This inquiry is framed "in terms

---

[1] Brown independently argues that the district court erred by treating these two drug convictions separately for purposes of computing Brown's criminal history under the United States Sentencing Guidelines ("Guidelines"), because Guideline 4A1.2 provides that sentences "imposed on the same day" are not to be counted separately "[i]f there is no intervening arrest." This Guideline also states that "[p]rior sentences always are counted separately" where, as here, "the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." Thus, Guideline 4A1.2 by its terms is inapplicable, and we need not reach the Government's other arguments that this Guideline is irrelevant to Brown's sentence.

of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion," *Begay v. United States*, 553 U.S. 137, 141 (2008), but we do not "requir[e] that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony," *James v. United States*, 550 U.S. 192, 208 (2007).

At times relevant to Brown's arrest and conviction for assaulting the corrections officers, CGS § 53a-167c(a) provided that:

> A person is guilty of assault of a peace officer, fireman, employee of an emergency medical service organization or employee of the department of correction when, with intent to prevent a reasonably identifiable peace officer, fireman[,] . . . employee of an emergency medical service organization . . . , or employee of the department of correction from performing his duty, and while such peace officer, fireman or employee is acting in the performance of his duties, (1) he causes physical injury to such peace officer, fireman or employee, or (2) he throws or hurls, or causes to be thrown or hurled, any rock, bottle, can or other article, object or missile of any kind capable of causing physical harm, damage or injury, at such peace officer, fireman or employee, or (3) he uses or causes to be used any mace, tear gas or any like or similar deleterious agent against such peace officer, fireman or employee, or (4) he throws, hurls, or causes to be thrown or hurled, any paint, dye or other like or similar staining, discoloring or coloring agent or any type of offensive or noxious liquid, agent or substance at such peace officer, fireman or employee.[2]

Brown contends that this statute covers both violent and non-violent crimes. In such circumstances, we may undertake "a limited inquiry into which part of the statute the defendant was convicted of violating," *Johnson*, 616 F.3d at 92 (quoting *United States v. Mills*, 570 F.3d 508, 511 (2d Cir. 2009) (per curiam)) (internal quotation mark omitted), at least where the statute of conviction is divisible in that it "describe[s] the violent felonies . . . in distinct subsections or

---

[2] The statute has since been amended in several respects, primarily to expand the list of protected classes and to cover certain additional types of conduct. Because these amendments are not germane to our analysis or the cases cited herein, we do not discuss them further.

elements of a disjunctive list," *Daye*, 571 F.3d at 229 n.4.

We have previously had occasion to consider whether CGS § 53a-167c(a) is divisible for purposes of this "limited inquiry." In *Canada v. Gonzales*, 448 F.3d 560 (2d Cir. 2006), we were presented with the question of whether an alien's conviction for assaulting a police officer in violation of CGS § 53a-167c(a)(1) categorically amounted to a "crime of violence" under 18 U.S.C. § 16(b),[3] thus rendering the alien removable as an aggravated felon. The petitioner in *Canada* argued, as a threshold matter, that "because CGS § 53a-167c(a)(1) does not delineate the various categories of public safety employees covered in the statu[t]e in separate subsections, the statute cannot be cleanly divided between conduct that is categorically a crime of violence and conduct that is not categorically a crime of violence." *Id.* at 567. We rejected that argument, noting that "the various categories of public safety officers protected by the statute are listed sequentially, each separated by a comma, and are phrased in the disjunctive." *Id.* at 568. Thus, we concluded: "CGS § 53a-167c(a)(1) is a divisible statute in that a court may look to the record of conviction for the limited purpose of determining which public safety employee was the subject of any assault, thereby permitting it to determine whether the alien's conviction was under a section of the statute that permits removal." *Id.*

---

[3] Section 16 defines the term "crime of violence" to mean:

(a)     an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b)     any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

We find this analysis to be fully applicable to the instant case. It was therefore appropriate for the district court to look to Brown's record of conviction — including the plea transcript, *see Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010) — to determine that Brown was convicted of assaulting employees of the department of correction in violation of CGS § 53a-167c(a)(1).

The question, then, is whether the district court properly concluded that a violation of this statute, subdivided as such and analyzed categorically, is a violent felony under the ACCA's residual clause. For the following reasons, we hold that it is. As our recent precedents explain, the analysis of whether an offense qualifies as a conviction for a violent felony under the ACCA's residual clause has two separate aspects. First, we consider whether the offense is similar "in kind" to the enumerated offenses that precede the residual clause — *i.e.*, burglary, arson, extortion, and the use of explosives — in that the offense in question "typically involve[s] purposeful, violent, and aggressive conduct." *Johnson*, 616 F.3d at 89 (alteration in original) (quoting *Begay*, 553 U.S. at 144-45) (internal quotation marks omitted). "Next, we must consider whether [the offense] is similar 'in degree of risk posed' to those enumerated offenses." *Id.* (quoting *Begay*, 553 U.S. at 143).

Turning first to the question of whether Brown's offense of conviction was similar "in kind" to the enumerated felonies — or, in other words, involved conduct that "makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim," *Begay*, 553 U.S. at 145 — we are again informed by our discussion of this statute in *Canada*.[4] *Canada*

---

[4] Although *Canada*'s holding that assaulting a police officer in violation of this statute is a "crime of violence" under Section 16(b) does not control our inquiry under the ACCA's residual clause, the issue in *Canada* is similar to the question presented here, and we find that

canvassed Connecticut courts' constructions of this statute to identify as its three constituent elements: "(1) intent to prevent a reasonably identifiable [employee of the department of correction] from performing his duties; (2) the infliction of physical injury to the [employee of the department of correction]; and (3) the victim must be a[n] [employee of the department of correction]." 448 F.3d at 565 (quoting *State v. Turner*, 879 A.2d 471, 475 (Conn. App. Ct. 2005)) (internal quotation marks omitted). Thus, we observed that in order to be convicted of violating subsection (a)(1) of the statute, "the offender must injure an officer while *intentionally* preventing the officer from performing his or her official duties." *Id.* at 568. We note also that the offense of conviction here likely applies primarily (if not exclusively) to assaults taking place in prisons, where the act of injuring an employee for the purpose of preventing her from performing her official duties tends to entail especially violent consequences. *See Johnson*, 616 F.3d at 92. For these reasons, we conclude that the assault of an employee of the department of correction in violation of CGS § 53a-167c(a)(1) "typically involve[s] purposeful, violent, and aggressive conduct." *Begay*, 553 U.S. at 144-45 (internal quotation marks omitted).[5]

Next, we compare the degree of risk posed by the offense of conviction to that presented by the enumerated felonies. The Supreme Court has framed this inquiry as "whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James*, 550 U.S. at 208. Here, a conviction for assaulting an employee of the department of correction in violation of CGS § 53a-167c(a)(1) requires that the victim suffer

_____

case's analysis of CGS § 53a-167c(a)(1) to be instructive. *See Daye*, 571 F.3d at 233 n.9.

[5] Insofar as Brown also contends that the ACCA's residual clause covers only property offenses, that contention is foreclosed by our previous holdings that the scope of this clause is not so limited. *See, e.g.*, *Daye*, 571 F.3d at 236.

physical injury.  *See Canada*, 448 F.3d at 571 n.9.  Because this offense involves the *certainty* of "injury to another," it follows that this second prong of the "violent felony" analysis was satisfied.

For the foregoing reasons, we conclude that Brown's conviction for assault of corrections officers in violation of CGS § 53a-167c(a)(1) qualifies as a violent felony under the ACCA and that his two drug convictions qualify as separate "serious drug offense[s]" thereunder.  The district court therefore did not err in imposing an enhanced sentence pursuant to the ACCA.  The judgment of the district court is **AFFIRMED**.