12-2393-cr
*United States v. Wiggan*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of July, two thousand thirteen.

PRESENT:

JON O. NEWMAN,
RALPH K. WINTER,
CHRISTOPHER F. DRONEY,
            *Circuit Judges*,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

            *Appellee*,

        v.                                        No. 12-2393-cr

HOPETON WIGGAN AKA HOPE,

            *Defendant-Appellant*,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLANT:                    ROBERT A. CULP, Law Office of Robert A. Culp, Garrison, New York

FOR APPELLEE:                    CHRISTOPHER M. MATTEI (Sandra S. Glover, *on the brief*), Assistant United States Attorney, *for* David

B. Fein, United States Attorney for the District of Connecticut, Hartford, Connecticut.

Appeal from a judgment of the United States District Court for the District of Connecticut (Stefan R. Underhill, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Hopeton Wiggan ("Wiggan") was convicted following a guilty plea of one count of possession of ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). In his plea agreement, Wiggan reserved the right to appeal the district court's denial of his motion to suppress evidence under Federal Rule of Criminal Procedure 11(a)(2). In addition, Wiggan seeks review of the district court's determination at sentencing that Wiggan had previously been convicted of at least three prior "violent felonies," and so was subject to a mandatory minimum of fifteen years' imprisonment under 18 U.S.C. § 924(e)(1), the Armed Career Criminal Act ("ACCA"). We assume the parties' familiarity with the underlying facts and procedural history of the case, as well as the issues presented for review.

**I.    Suppression of the Firearm**

**A.    District Court's Factual Findings**

The district court concluded that on the morning of October 25, 2008, a dispatcher at the New Haven Police Department relayed an anonymous tip that a black man named "Hope" had a gun concealed in his pocket. The anonymous tipper described "Hope" as wearing a blue sweater, blue jeans with a design on the back pocket, and a blue hooded sweatshirt. The tip also indicated that he was in a barbershop at the corner of Lombard and Rowe Streets in the Fair Haven neighborhood of New Haven.

2

Officers Carlos Roman and Diego Quintero responded to the dispatch and arrived at Moe Love's Barbershop on Rowe Street shortly thereafter. Wiggan sat inside the store, and matched the description in the anonymous tip. Officer Roman asked in a commanding tone whether anyone in the shop was named "Hope." Wiggan, who had been slouched in his chair, shifted his body, raised his hand and identified himself. He also glanced nervously over his right shoulder, toward the back exit. Roman and Quintero walked quickly until they stood two feet from Wiggan, ensuring that Wiggan could not leave the store without bumping into the officers. Roman then asked Wiggan to step outside for questioning. Wiggan began to stand up. As Wiggan was standing, Roman saw what appeared to be a brown pistol grip in the right front pocket of Wiggan's pants. Roman then yelled, "75!," the police department's code for a handgun, to alert Quintero to the presence of the weapon. Roman ordered Wiggan to stand and keep his hands away from his pockets, then declared that Wiggan was under arrest. The officers placed Wiggan in handcuffs before leading him outside.

As the officers led Wiggan out of the barbershop, Quintero asked Wiggan whether he had "anything" on his person. Wiggan responded that he had a gun. Roman and Quintero searched Wiggan's pants pocket and retrieved a loaded Colt .45 caliber pistol. The officers asked Wiggan whether he had a permit for the weapon, and he admitted that he did not. A search of Wiggan's person also uncovered a large plastic bag of marijuana, a scale, and $1,348 in cash.

**B.      Challenges to the District Court's Factual Findings**

Wiggan challenges the district court's factual findings. We review a district court's factual findings in a suppression motion for clear error. *United States v. Lucky*, 569 F.3d 101, 106 (2d Cir. 2009). In reaching the conclusions that it did, the district court essentially credited

the testimony of Officer Roman rather than Wiggan's witnesses. We believe that the district court's decision to credit Officer Roman's testimony in the relevant respects was well-reasoned. The district court explained that although Wiggan's witnesses, George Blackwell and Rodney Tucker (who were both present in the barber shop), were credible, "Roman's initial questioning and the officers' eventual handcuffing of Wiggan happened fast – literally, in a matter of seconds – and were quick enough for witnesses to miss material details if they were turned away." Blackwell had acknowledged that he was concerned for his son and repeatedly glanced at him during the relevant events, while Tucker looked down at his customer's hair. In light of the distractions facing Wiggan's witnesses and the speed of the encounter, it was not clear error for the district court to credit Officer Roman's testimony instead.

Wiggan also asserts that the district court should have granted his motion to reopen the suppression hearing to allow him to introduce additional testimony. We review a district court's decision to grant or deny a motion for reconsideration of a suppression order for abuse of discretion. *United States v. Bayless*, 201 F.3d 116, 131 (2d Cir. 2000). Wiggan does not appear to have reserved the right to appeal this issue in his plea agreement. Even assuming that Wiggan's plea agreement permits him to appeal the district court's decision not to reopen the suppression hearing, we find that the district court did not abuse its discretion. The district court carefully weighed the proffered additional testimony that would be provided by Wiggan and two new witnesses, and found the proffered testimony insufficient to warrant reopening the hearing. Also, while the point is not dispositive, Wiggan has failed to provide a sufficient explanation for his failure to introduce the proffered testimony at the first suppression hearing. *See In re*

4

*Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 177, 196-97 (2d Cir. 2008) (holding that lack of justification for delay is "one factor" a district court may consider).

## C. Timing and Nature of Seizure

Wiggan contends that he was seized by the police officers before he began to stand. We review legal conclusions and mixed questions of law and fact *de novo*. *Lucky*, 569 F.3d at 105. A Fourth Amendment seizure only occurs when an officer restrains the liberty of a citizen. *See United States v. Mendenhall*, 446 U.S. 544, 552 (1980). Under this standard, no seizure has occurred if "a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *United States v. Drayton*, 536 U.S. 194, 202 (2002) (quoting *Florida v. Bostick*, 501 U.S. 429, 436 (1991)).

We conclude that Wiggan was not seized until the police officers placed him in handcuffs. A police officer does not effectuate a seizure when she simply requests that a citizen move in order "to secure a safe and convenient place to talk." *United States v. Springer*, 946 F.2d 1012, 1017 (2d Cir. 1991); *see also United States v. Torres*, 949 F.2d 606, 608 (2d Cir. 1991) ("[W]e do not believe that a law enforcement agent's request to step inside a police office without more transforms an otherwise consensual encounter into a fourth amendment seizure."); *Springer*, 946 F.2d at 1017 (holding that a police officer's request that an individual step back from a curb and away from a taxi stand did not constitute a seizure). As a result, Officer Roman's request that Wiggan step outside did not constitute a seizure. The fact that the request occurred inside the cramped space of a barber shop does not make it more coercive. *See Drayton*, 536 U.S. at 204 (holding that the fact that an encounter took place on a crowded bus did "not on its own transform standard police questioning of citizens into an illegal seizure").

This point has special force here: the officers did not choose to encounter Wiggan in a barbershop; they were simply responding to a tip that he was there. As a result, it would be inappropriate to ascribe any of the features of the setting to the officers, or to suggest that it made their requests inherently more coercive. The setting also made the officers' requests more reasonable, not less, since it heightened the risk of harm to the officers or innocent bystanders.

Wiggan also contends that the seizure was an arrest, not a stop. "A permissible investigative stop may become an unlawful arrest if the means of detention are 'more intrusive than necessary.'" *United States v. Tehrani*, 49 F.3d 54, 61 (2d Cir. 1995) (quoting *United States v. Perea*, 986 F.2d 633, 644 (2d Cir. 1993)). "In determining whether an investigatory stop is sufficiently intrusive to ripen into a *de facto* arrest, the Second Circuit considers the 'amount of force used by the police, the need for such force, and the extent to which an individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used.'" *United States v. Vargas*, 369 F.3d 98, 101 (2d Cir. 2004) (quoting *Perea*, 986 F.2d at 645).

We conclude that the seizure was a stop, not an arrest. Although "under ordinary circumstances, drawing weapons and using handcuffs are not part of a *Terry* stop, intrusive and aggressive police conduct is not an arrest when it is a reasonable response to legitimate safety concerns on the part of the investigating officers." *Vargas*, 369 F.3d at 102 (internal quotation marks and alteration omitted). Here, as the district court observed, Wiggan was placed in handcuffs but the officers did not draw their guns. While the handcuffs obviously amounted to a considerable intrusion on Wiggan's freedom of movement, they were less dangerous and

6

coercive than drawn weapons. Moreover, Officer Roman had directly observed an apparent firearm in Wiggan's pocket, providing a reliable basis for the officers' concerns. Finally, the detention of Wiggan prior to confirmation of the presence of the illegal firearm and his arrest was very brief, lasting only for a few seconds. *See id.* These facts indicate that the stop did not ripen into an arrest until his possession of the weapon was confirmed.

As to Officer Roman's announcement that Wiggan was under arrest, Roman's announcement was "objective conduct," not merely a "subjective belief" on the part of the officers. *United States v. Jackson*, 652 F.2d 244, 250 (2d Cir. 1981). While Officer Roman's apparent belief that the encounter had evolved into an arrest is not relevant to the analysis, his words surely are. However, this one factor is not enough to alter the outcome. On these facts, Officer Roman's words simply did not alter the coerciveness of the encounter. As a result, his announcement did not convert the stop into a *de facto* arrest.

**D.  Reasonable Suspicion**

Wiggan contends that even if he was merely stopped at the moment that the officers placed him in handcuffs, the officers still lacked the reasonable suspicion that would be required to justify their actions. In examining whether a *Terry* stop is supported by the necessary reasonable suspicion, a reviewing court examines whether there was a "'particularized and objective basis' for suspicion of legal wrongdoing under the 'totality of the circumstances.'" *United States v. Simmons*, 560 F.3d 98, 103 (2d Cir. 2009) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

We conclude that the officers had the reasonable suspicion required to support a *Terry* stop. By the time the officers placed Wiggan in handcuffs, Officer Roman had observed

Wiggan's firearm and his nervous demeanor. Reasonable suspicion was also supported by the fact that Wiggan was carrying the gun in his pocket. Officer Roman testified that in his experience, people who are legally in possession of a firearm "[u]sually [carry them] in a holster, under a garment," while people who are in illegal possession of a firearm typically keep their weapons in their "[f]ront pocket or tucked into their waistband or inside a coat or jacket." These specific, articulable facts gave rise to the reasonable suspicion required to support the officers' *Terry* stop of Wiggan.

We thus conclude that the district court did not err in denying Wiggan's motion to suppress the firearm discovered by the officers.

**II.    Armed Career Criminal Act**

Under 18 U.S.C. § 924(e)(1), a person who violates section § 922(g) "and has three previous convictions . . . for a violent felony" is subject to a mandatory minimum of fifteen years' imprisonment. Subsection 924(e)(2)(B) defines "violent felony" to mean "any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of injury to another."

Prior to the instant offense, Wiggan pled guilty to two counts of first degree robbery in violation of section 53a-133 of the Connecticut General Statutes, and one count of assault on a peace officer in violation of section 53a-167c. Wiggan also entered *Alford* pleas on one count of

8

conspiracy to commit first degree robbery and one count of conspiracy to commit second degree robbery.[1] Wiggan contends that none of these offenses is a "violent felony" within the meaning of 18 U.S.C. § 924(e)(1). The district court concluded that Wiggan's two first degree robbery offenses, his assault on a peace officer offense, and his conspiracy to commit first degree robbery offense were all violent felonies. The statute only requires three violent felonies before the mandatory minimum applies. Since we conclude that Wiggan's two first-degree robbery offenses and his assault on a peace officer offense all qualify as violent felonies, we need not reach the issue of whether Wiggan's conspiracy offense qualifies.

**A.  First Degree Robbery Under Connecticut Law**

Section 53a-133 of the Connecticut General Statutes provides that "[a] person commits robbery when, in the course of committing a larceny, *he uses or threatens the immediate use of physical force upon another person* for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." (emphasis added). In order to commit a first degree robbery under Connecticut law, the person must also cause a serious physical injury to a non-participant in the crime; be armed with a deadly weapon; use or threaten

---

[1] In a 28j letter, Wiggan contends that the fact of a prior conviction must be stipulated by the defendant or proven to a jury in order for it to be used in triggering a mandatory minimum under the ACCA. Under *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the fact of a prior conviction may be found by a judge. Contrary to Wiggan's assertion, the Supreme Court's decision in *Alleyne v. United States*, 133 S.Ct. 2151 (2013), did not "effectively overrule[] *Almendarez-Torres*." Indeed, the Supreme Court explicitly declined to revisit *Almendarez-Torres*. *See Alleyne*, 133 S.Ct. at 2160 n.1. We decline Wiggan's invitation to ignore binding Supreme Court precedent. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[I]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." (internal quotation marks omitted)); *United States v. Santiago*, 268 F.3d 151, 155 n.6 (2d Cir. 2001) ("It is not within our purview to anticipate whether the Supreme Court may one day overrule" *Almendarez-Torres*.).

the use of a dangerous instrument; or display or threaten the use of what he represents to be a gun. Conn. Gen. Stat. § 53a-134.

So defined, first degree robbery under Connecticut law falls squarely within the first prong of the definition of "violent felony," which covers offenses having "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); *see also United States v. Brown*, 52 F.3d 415, 425-26 (2d Cir. 1995) (concluding that forcible stealing under New York law, which is defined in a similarly worded statute, is categorically a crime of violence). As a result, Wiggan's two first degree robbery offenses are violent felonies within the meaning of 18 U.S.C. § 924(e)(1).

**B.      Assault on a Peace Officer Under Connecticut Law**

Section 53a-167c of the Connecticut General Statutes states that a person is guilty of the offense of assault on a peace officer "when, with intent to prevent a reasonably identifiable peace officer . . . [or] employee of the Department of Correction . . . from performing his or her duties, and while such peace officer . . . [or] employee . . . is acting in the performance of his duties, (1) such person causes physical injury to such peace officer." The offense can also be committed by throwing dangerous or offensive objects at a peace officer, *id.* §§ 53a-167c(a)(2), (4), (5), or by using a "deleterious agent" such as mace against an officer, *id.* § 53a-167c(a)(3).

Wiggan argues that his guilty plea does not establish that he violated section 53a-167c(a)(1), as opposed to section (a)(2)-(5).[2] This is inconsistent with the factual basis of the

---

[2] In a 28j letter, Wiggan cites the Supreme Court's recent decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013) for the proposition that "the government's reliance on an interpretation of the plea colloquy involved the district court in inappropriate fact finding in derogation of the Sixth Amendment and that went beyond discerning the fact of a prior conviction." (internal quotation marks omitted). The district court's examination of the plea colloquy, like ours, was limited to determining which section of the divisible statute Wiggan pled guilty to. This is entirely consistent with *Descamps*. *See Descamps*, 133 S.Ct. at 2283-85.

10

plea: Wiggan acknowledged that the prosecutor's claim that he punched a police officer "in the face with a closed fist," was "substantially accurate." Given the state judge's clear distinction between Wiggan's guilty pleas and his *Alford* pleas at the same proceeding, we are satisfied that Wiggan confirmed that this was the factual basis for his conviction. It is thus clear that he violated section 53a-167c(a)(1). The plea also establishes that Wiggan struck a police officer, and not a member of any of the other classes of qualifying officials listed in the statute.

In *United States v. Brown*, 629 F.3d 290, 296 (2d Cir. 2011) (per curiam), we held that assaulting an employee of the Department of Correction is categorically a violent felony. Wiggan seeks to distinguish his offense by seizing upon one sentence in our reasoning: "We note also that the offense of conviction here likely applies primarily (if not exclusively) to assaults taking place in prisons, where the act of injuring an employee for the purpose of preventing her from performing her official duties tends to entail especially violent consequences." *Id.* But the Court's observation was framed as dictum. *See id.* ("We note also . . ."). It is also plainly unnecessary to the conclusion it supports: that the offense has a sufficiently stringent *mens rea* requirement to qualify as a violent felony. To be guilty under the statute, an individual must have an intent to interfere with a peace officer's performance of her official duties. Wiggan's suggestion that the ACCA demands a further intent to injure, is flatly inconsistent with Supreme Court precedent. *Sykes v. United States*, 131 S.Ct. 2267, 2276 (2011) (concluding that vehicular flight from a police officer is a violent felony under the ACCA). Like vehicular flight from a police officer, intentionally preventing a police officer from performing her duties "is dangerous because it can end in confrontation leading to violence. . . . [It] is a direct challenge to an officer's authority." *Id.* at 2273 (internal citation omitted). As a result, the fact that the offense

of assaulting a police officer does not occur exclusively in prisons does not make it any less of a violent felony. *Cf. Canada v. Gonzales*, 448 F.3d 560, 568 (2d Cir. 2006) (holding that assault on a police officer in violation of section 53a-167c(a)(1) of the Connecticut General Statutes is categorically a "crime of violence" for purposes of immigration law). Wiggan's assault on a peace officer is thus a violent felony within the meaning of 18 U.S.C. § 924(e)(1).

Since Wiggan was convicted of at least three violent felonies, the district court did not err in sentencing him under the ACCA.

**Conclusion**

We have considered all of Wiggan's remaining arguments and found each of them to be without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court